

November 17, 2011

Court Case No. CV-11-2770-MEJ

I object to my Identifying Information to be given out to the Plaintiff.

I have notified Charter Communications of this decision.

DO NOT RELEASE ANY OF MY PERSONAL INFORMATION.



Charter Communications, Inc.
Legal Department
12405 Powerscourt Dr.
St. Louis, MO 63131
Fax: 314-909-0609

## IMPORTANT LEGAL NOTICE: PLEASE READ CAREFULLY

November 2, 2011

### *OBJECTION DEADLINE*

# December 2, 2011, 4:00 pm CT

### References Used In This Notice

- Court Case: New Sensations, Inc. (the "Plaintiff") v. Does 1-1474, Court Case No. CV-11-2770-MEJ
- Court: United States District Court for the Northern District of California
- Copyrighted Work: Big Bang Theory A XXX Parody
- Identifying Information: Accountholder Name, Address(es), Telephone Number, Email Address(es), Modem MAC address
- Charter Case Number: 11-3730
- Your ID Number: 414

Dear Sir or Madam:

Charter has received a subpoena from attorneys for the Plaintiff seeking certain information about your Charter internet account ("Account"), including the Identifying Information listed above. The Court has issued an order compelling Charter to disclose this information relating to your Charter Account. Charter respects the privacy of its subscribers, and will disclose customer information only to the extent required by law, as indicated in Charter's privacy policy on www.charter.com. Because a court order authorizes the Plaintiff to obtain this information, Charter must disclose these records unless you formally oppose disclosure in the Court by the objection deadline stated above. Copies of the court order and subpoena are attached, as well as any other documentation that may have been court-ordered to be provided with this notice.

Charter records indicate that an IP address listed on an exhibit to the subpoena was assigned to your Account at the given date and time. Below is a copy of the log that associates the IP with your Account in this format: IP Address – Modem MAC – CPE MAC – IP Lease Start Time – IP Lease End Time.
24.205.19.111 00:18:68:d8:9f:86 00:15:f2:a4:17:d7 2010-05-08 00:33:36 2010-09-30 15:41:50

**Please note**: Charter cannot provide you legal representation and cannot object to the subpoena or court order on your behalf. If you wish to take action in this matter, you should contact an attorney immediately, who can advise you of your specific legal rights. If you intend to oppose the order, you should do so without delay in the court identified in the subpoena and order. **AN OBJECTION MADE SOLELY TO CHARTER IS INSUFFICIENT; OBJECTIONS MUST BE MADE DIRECTLY TO THE COURT. HOWEVER, CHARTER MUST BE NOTIFIED OF AN OBJECTION NO LATER THAN THE OBJECTION DEADLINE GIVEN ABOVE.**

If you file an opposition to the order, you or your attorney should provide a copy of the objection you submitted with the Court to Charter (attention "Legal – File-Sharing Team" via facsimile at 314-909-0609) by the objection deadline stated above so that Charter may withhold disclosure of your information. **PLEASE CLEARLY INDICATE IN YOUR COPY TO CHARTER (1) THAT YOUR OBJECTION WAS MADE TO THE COURT AND (2) PROVIDE YOUR NAME AND ADDRESS OR A COPY OF THIS LETTER, EVEN IF YOUR OBJECTION TO THE COURT IS ANONYMOUS. WITHOUT THIS INFORMATION CHARTER CANNOT WITHHOLD DISCLOSURE OF YOUR INFORMATION.**

Please note that the objection deadline provided in this letter and the due date on the subpoena may not coincide as Charter may have been granted an extension to fulfill its obligations under this court order.

Questions regarding your legal rights should be directed to the attorney of your choice. If you or your attorney has questions regarding the subpoena itself, you should contact the requestor directly. If you have any questions regarding your Account, Charter's policies or this correspondence, you should review the attached FAQs or the named accountholder may call Charter's Security Department directly at 866-228-0195. Please have this letter in hand if you call because you will be asked to confirm information contained herein.

Sincerely,

**Charter Communications, Inc.**

Enclosures

# FREQUENTLY ASKED QUESTIONS

**Q: Why did I receive this letter?**
**A:** Charter received a subpoena related to the Court Case described below. As part of the subpoena, the Plaintiff sent Charter a list of IP addresses that allegedly downloaded and/or distributed the Copyrighted Work on a specific date and time. An IP address on that list was associated with your Charter internet account; your corresponding IP address log was stated in the letter you received. Because of this association, Charter is required to disclose your Identifying Information pursuant to the subpoena and court order. The MAC address is a unique number assigned to your modem.

**Q: What is this Court Case about?**
**A:** The Plaintiff has filed a lawsuit alleging that certain persons have infringed their copyrights by downloading and/or distributing the Copyrighted Work and has issued subpoenas to learn the identities of these persons. However, the Plaintiff does not know the actual identities of these persons – it only knows the Internet Protocol address ("IP address") of the internet account associated with the alleged activity. Accordingly, the Plaintiff has filed this lawsuit against anonymous "John Doe" defendants and has issued a subpoena pursuant to a court order to determine the identities of the anonymous Doe defendants. As described above, one of these subpoenas has been sent to Charter as your internet service provider. If the Plaintiff receives your Identifying Information, you will likely be added as a named defendant to the lawsuit.

**Q: Am I being charged with a crime?**
**A:** This notice relates solely to a civil lawsuit, not a criminal investigation.

**Q: Can Charter give me legal advice and/or object to this subpoena on my behalf?**
**A: NO.** This notice does not provide legal advice and Charter cannot advise you on what grounds exist, if any, to object to this subpoena. If you would like legal advice you should consult your own attorney. You can seek legal assistance from several sources, such as private attorneys, community legal aid organizations, bar association referral services, legal clinics at universities, and advocacy groups specializing in making such objections.

**Q: Has Charter disclosed my name and contact information to the Plaintiff yet?**
**A: NO.** Your Identifying Information has not been disclosed yet. However, it will be disclosed unless you object to the subpoena by following the steps outlined below before the objection deadline stated in the letter.

**Q: What must I do if I do not want my Identifying Information disclosed to the Plaintiff?**
**A:** If you do not want your information disclosed, you must object directly to the court identified in the order and subpoena by the objection deadline stated in the letter. You must also notify Charter by sending a copy of this objection to the attention of "Legal – File-Sharing Team" via fax to 314-909-0609. Please clearly indicate in your copy to Charter (1) that your objection was made to the court and (2) provide your name and address or a copy of the letter, even if your objection to the court is anonymous. Without this information Charter cannot withhold disclosure of your information. If you object to the subpoena directly to the court, your Identifying Information will not be disclosed until the court rules on your motion. Please note that an objection made solely to Charter is insufficient; it must be made to the court.

In summary, to prevent the disclosure of your Identifying Information, the following steps must be taken:
1. You must object to the subpoena directly to the court before the objection deadline.
2. You must notify Charter and send a copy of this objection to the court before the objection deadline. This copy should be sent by fax to 314-909-0609 to the attention of "Legal – File-Sharing Team" and must (1) clearly indicate that your objection was made to the court and (2) provide your name and address or a copy of the letter, even if your objection to the court is anonymous.
3. Remember that objections must be made to the court; objections made solely to Charter will not prevent the disclosure of your Identifying Information.

**Q: What if I do nothing?**
**A:** Charter is required to disclose your Identifying Information to the Plaintiff.

Case3:11-cv-02770-MEJ Document52 Filed11/21/11 Page5 of 17

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Missouri

| | | |
|---|---|---|
| New Sensations, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. CV-11-2770-MEJ |
| | ) | |
| DOES 1-1474 | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Central District of California ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Custodian of Records, CHARTER COMMUNICATIONS (hereinafter "ISP"), Law Enforcement Paralegal
12405 Powerscourt Drive, Saint Louis, MO 63131

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

Documents sufficient to identify the names, addresses, telephone numbers, and email addresses of ISP's subscribers assigned the IP addresses identified on Attachment A on the corresponding dates at the corresponding times. You are to comply with this subpoena pursuant to the terms set forth in the Order attached hereto as Attachment B.

| Place: Law Offices of Ira M. Siegel c/o BRS<br>100 Chesterfield Business Parkway, 2nd Floor<br>Saint Louis, MO 63005 | Date and Time:<br>November 28, 2011 at 9:00 a.m. ✷ |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached. ✷ Compliance with this subpoena may be a multi-step process pursuant to the Order attached (Attachment B). At least the first step should be completed by October 19, 2011, with all steps completed by the date set forth under "Date and Time" above: November 28, 2011. (See paragraphs 4 and 5 of the Order.)

Date: September 14, 2011

*CLERK OF COURT*  OR  /s/ Ira M. Siegel

*Signature of Clerk or Deputy Clerk*  *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* _____
New Sensations, Inc._____, who issues or requests this subpoena, are:
Ira M. Siegel, Law Offices of Ira M. Siegel, 433 N. Camden Drive, Suite 970, Beverly Hills, CA 90210, Email: subpoena@irasiegellaw.com, Telephone: 888-406-1004

ATTACHMENT B

UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| NEW SENSATIONS, INC.,<br><br>              Plaintiff,<br>    v.<br>DOES 1-1,474,<br>              Defendants. | No. C 11-2770 MEJ<br><br>**ORDER GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR LEAVE TO TAKE LIMITED EXPEDITED DISCOVERY**<br><br>**Docket No. 5** |

### I. INTRODUCTION

Plaintiff New Sensations, Inc. ("Plaintiff") has filed an *ex parte* Application pursuant to Federal Rules of Civil Procedure 26 and 45, requesting leave to take expedited discovery to determine the identity of 1,474 Doe Defendants (collectively, "Defendants") named in this action. Dkt. No. 5 ("Pl.'s App."). For the reasons provided below, the Court **GRANTS** Plaintiff's Application.

### II. BACKGROUND

On June 7, 2011, Plaintiff filed this lawsuit against 1,474 Doe Defendants, alleging that Defendants illegally reproduced and distributed a work subject to Plaintiff's exclusive license, ("*Big Bang Theory: A XXX Parody*"), using an internet peer-to-peer ("P2P") file sharing network known as BitTorrent, and thereby violated the Copyright Act, 17 U.S.C. § 101-1322. Compl. ¶¶ 6-15, Dkt.

No. 1. Plaintiff alleges that because the alleged infringement occurred on the Internet, Defendants acted under the guise of their Internet Protocol ("IP") addresses rather than their real names. *Id.* at ¶ 10; Pl.'s App. at 5-6. As a result, Plaintiff contends that it cannot determine Defendants' true identities without procuring the information from Defendants' respective Internet Service Providers ("ISPs"), which can link the IP addresses to a real individual or entity. Pl.'s App. at 6. Consequently, Plaintiff asks the Court to grant it expedited discovery to issue subpoenas to the relevant ISPs so that the ISPs will produce the name, address, telephone number, and email address for each Defendant. *Id.* at 25, Ex. 1.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 26(d)(1), a court may authorize early discovery before the Rule 26(f) conference for the parties' convenience and in the interest of justice. Courts within the Ninth Circuit generally use a "good cause" standard to determine whether to permit such discovery. *See, e.g., Apple Inc. v. Samsung Electronics Co., Ltd.*, 2011 WL 1938154, at *1 (N.D. Cal. May 18, 2011); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276. The court must perform this evaluation in light of "the entirety of the record . . . and [examine] the reasonableness of the request in light of all the surrounding circumstances." *Id.* at 275 (citation & quotation marks omitted). In determining whether there is good cause to allow expedited discovery to identify anonymous internet users named as doe defendants, courts consider whether: (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

## IV. DISCUSSION

**A.  Whether Plaintiff has Identified the Defendants with Sufficient Specificity**

Under the first factor, the Court must examine whether Plaintiff has identified the Defendants with sufficient specificity, demonstrating that each Defendant is a real person or entity who would be subject to jurisdiction in this Court. *See id.* at 578. Here, Plaintiff proffers that it retained Copyright Enforcement Group, LLC ("CEG"), which utilized forensic software to identify Defendants' IP addresses on the date and time that they engaged in the alleged distribution of *Big Bang Theory: A XXX Parody* via the BitTorrent protocol, and has compiled the information into a log attached as Exhibit A to Plaintiff's Complaint. Pl.'s App. at 9; Decl. of Jon Nicolini ¶¶ 10-16, Dkt. No. 5-1. Plaintiff explains that Defendants gained access to the Internet only by setting up an account through various ISPs, and that by providing the ISPs the information detailed in Exhibit A, the ISPs can look up the Defendants' identities by reviewing their respective subscriber activity logs. Nicolini Decl. ¶¶ 18-20. Thus, the Court finds that Plaintiff has come forward with sufficient information demonstrating that the Defendants are real persons or entities who may be sued in federal court. *See MCGIP, LLC v. Does 1-149*, 2011 WL 3607666, at *2 (N.D. Cal. Aug. 15, 2011) (finding that the plaintiff had identified the Doe defendants with sufficient specificity by submitting a chart listing each of the defendants by the IP address assigned to them on the day it alleged the particular defendant engaged in the infringing conduct).

**B.  Whether Plaintiff has Identified All Previous Steps to Locate Defendants**

Under the second factor, the Court must assess the prior steps Plaintiff has taken to locate the Defendants. *See Columbia Ins. Co.*, 185 F.R.D. at 579. "This element is aimed at ensuring that plaintiffs make a good faith effort to comply with the requirements of service of process and specifically identifying defendants." *Id.* Here, Plaintiff contends that it has exhausted all possible means to find the Defendants' names, addresses, phone numbers, and email addresses. Pl.'s App. at 9. In support, Plaintiff cites to paragraphs 18 through 20 of Mr. Nicolini's Declaration. *Id.* Reviewing Mr. Nicolini's testimony, he states CEG's System inspects file-sharing networks for computers that are distributing at least a substantial portion of a copy of a copyrighted work owned

3

1  by Plaintiff, and when CEG finds such a computer, CEG's System also collects publicly accessible
2  information, including the time and date the infringer was found, the IP address assigned to the
3  infringer's computer, the size of the accused file, and the name of the ISP having control of the IP
4  address. Nicolini Decl. ¶ 18. Mr. Nicolini states that, because of the partially anonymous nature of
5  the P2P Internet distribution system used by Defendants, CEG is unable to determine their true
6  names, street addresses, telephone numbers, and email addresses. *Id.*

7  First, to locate swarms[1] where peers were distributing *Big Bang Theory: A XXX Parody*,
8  CEG utilizes its data collection system to find digital files on the Internet that have the same title as
9  the copyrighted work. *Id.* ¶¶ 11, 14. Mr. Nicolini states that, in this case, the P2P network on which
10 CEG found unauthorized distribution of *Big Bang Theory: A XXX Parody* was a BitTorrent network.
11 *Id.* ¶ 16. CEG then downloads a full copy of the file, which is then forwarded to a two-stage
12 verification computer process and identified by two people. *Id.* ¶ 17. The process compares the
13 digital data in the suspect file with digital data in a digital copy of the motion picture obtained from
14 Plaintiff. *Id.* If the suspect file matches the authorized file, then the two people play the suspect file
15 and watch the motion picture. *Id.* If both people confirm that a substantial portion of the motion
16 picture in the suspect file is substantially the same as a corresponding portion of *Big Bang Theory: A*
17 *XXX Parody*, then particular unique data (often referred to as metadata) in the suspect file is noted
18 by CEG's System, and the System searches for additional computers on P2P networks that have the
19 same suspect file. *Id.*

20 After locating and inspecting computers that are distributing at least a substantial portion of a
21 copy of *Big Bang Theory: A XXX Parody*, Mr. Nicolini states that CEG's System collects (a) the
22 time and date the infringer was found, (b) the time(s) and date(s) when a portion of the accused file

---

[1] P2P networks distribute infringing copies of copyrighted works with file sharing software such as BitTorrent when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. Nicolini Decl. ¶ 6. This file is referred to as the first "seed." *Id.* Other users, who are referred to as "peers," then access the Internet and request the file. *Id.* These users engage each other in a group, referred to as a "swarm," and begin downloading the seed file. *Id.* As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm. *Id.*

4

1  was downloaded successfully to the accused infringer's computer, (c) the time and date the infringer
2  was last successfully connected to via the P2P network with respect to the infringer's computer's
3  downloading and/or uploading the accused file to the Internet, (d) the IP address assigned to the
4  infringer's computer, (e) the P2P software application used by the infringer and the port number
5  used by the infringer's P2P software, (f) the size of the accused file, (g) the percent of the file
6  downloaded by CEG from the infringer's computer, (h) the percent of the accused file on the
7  infringer's
8  computer which is available at that moment for copying by other peers, and (i) any relevant
9  transfer errors. *Id.* ¶ 18. In addition, CEG uses available databases to record the name of the ISP
10 having control of the IP address and the state (and often the city or county) associated with that IP
11 address. *Id.*
12          Based on Mr. Nicolini's explanation of the foregoing steps as utilized to investigate
13 Defendants' activity with respect to *Big Bang Theory: A XXX Parody* on the BitTorrent protocol, the
14 Court finds that Plaintiff has sufficiently described its efforts to identify Defendants.
15 **C.      Whether Plaintiff's Suit Against Defendants Could Withstand a Motion to Dismiss**
16          Under the third factor, the inquiry shifts to the substance of Plaintiff's claims and analyzes
17 whether Plaintiff's Complaint would likely survive a motion to dismiss. *See Columbia Ins. Co.*, 185
18 F.R.D. at 579. In its Complaint, Plaintiff has asserted a federal copyright infringement claim. To
19 state a claim for copyright infringement, Plaintiff must establish: (1) ownership of a valid copyright,
20 and (2) copying of constituent elements of the copyrighted work that are original. *Rice v. Fox*
21 *Broad. Corp.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*,
22 499 U.S. 340, 361 (1991)). "To be liable for direct infringement, one must 'actively engage in' and
23 'directly cause' the copying." *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1199
24 (N.D. Cal. 2004). Reviewing Plaintiff's Complaint, Plaintiff has adequately alleged that *Big Bang*
25 *Theory: A XXX Parody* is the subject of a valid Certificate of Registration issued by the United
26 States Copyright Office and that Plaintiff is the exclusive rightsholder of the distribution and
27 reproduction rights of *Big Bang Theory: A XXX Parody*. Compl. ¶¶ 7, 8. Plaintiff has also alleged
28

1 that the Defendants reproduced and distributed *Big Bang Theory: A XXX Parody* via BitTorrent to
2 numerous third parties. Compl. ¶¶ 10-12. Additionally, Plaintiff has alleged that Defendants
3 actively engaged in or directly caused the copying by completing each of the steps in the BitTorrent
4 file-sharing protocol, including intentionally downloading a torrent file particular to *Big Bang*
5 *Theory: A XXX Parody*, loading that torrent file into the BitTorrent client, entering a BitTorrent
6 swarm particular to *Big Bang Theory: A XXX Parody*, and ultimately, downloading and uploading
7 pieces of a *Big Bang Theory: A XXX Parody* file to eventually obtain a whole copy of the file. *Id*.
8 Based on these allegations, the Court finds that Plaintiff has pled a *prima facie* case of copyright
9 infringement and set forth sufficient supporting facts to survive a motion to dismiss.

**D. Whether there is a Reasonable Likelihood of Being Able to Identify Defendants**

The fourth factor examines whether Plaintiff has demonstrated that there is a reasonable likelihood that the discovery it requests will lead to the identification of Defendants such that it may effect service of process. *See Columbia Ins.*, 185 F.R.D. at 580. As indicated above, Plaintiff contends that the key to locating the Defendants is through the IP addresses associated with the alleged activity on BitTorrent. Specifically, Plaintiff contends that because ISPs assign a unique IP address to each subscriber and retain subscriber activity records regarding the IP addresses assigned, the information sought in the subpoena will enable Plaintiff to serve Defendants and proceed with this case. *See* Pl.'s App. at 6; Nicolini Decl. ¶¶ 19-20. Taking this into account, the Court finds that Plaintiff has made a sufficient showing as to this factor.

**E. Summary**

Taking the foregoing factors into consideration, the Court finds that Plaintiff has demonstrated that good cause exists to grant it leave to conduct early discovery. Moreover, the Court finds that the expedited discovery sought furthers the interests of justice and presents minimal inconvenience to the ISPs to which the subpoenas are directed. Thus, the expedited discovery is in line with Rule 26(d).

**F. Joinder of 1,474 Defendants**

Having found that expedited discovery is appropriate, the question becomes whether the

discovery sought is proper as to all 1,474 Defendants. Plaintiff presents a lengthy discussion in its Application as to why its decision to name join 1,474 Defendants is justified under Rule 20. *See* Pl.'s App. at 11-19. Under Rule 20, defendants may be joined in one action when claims arise from the same transaction or occurrence or series of transactions or occurrences, and any question of law or fact in the action is common to all defendants. Fed. R. Civ. P. 20(a)(2). The permissive joinder rule "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1997). The purpose of Rule 20(a) is to address the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence, and (2) some question of law or fact common to all the parties must arise in the action. Fed. R. Civ. P. 20(a). Both of these requirements must be satisfied in order to justify party joinder under Rule 20(a). *Id.* In situations of misjoinder of parties, Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."

      1.     Same Transaction, Occurrence, or Series of Transactions or Occurrences

"The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of transactions or occurrences' to require a degree of factual commonality underlying the claims." *Bravado Int'l Group Merchandising Servs. v. Cha*, 2010 WL 2650432, at *4 (C.D. Cal. June 30, 2010) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir.1997)). Typically, this means that a party "must assert rights . . . that arise from related activities-a transaction or an occurrence or a series thereof." *Id.* (citation omitted). Recently, courts in this District – as well as several other federal districts – have come to varying decisions about the proprietary of joining multiple defendants in BitTorrent infringement cases. *See MCGIP, LLC v. Does 1-149*, 2011 WL 3607666, at 3 (N.D. Cal. Aug. 15, 2011) (listing a sample of recent decisions). This Court has carefully reviewed such decisions and notes that they are highly dependent on the information the plaintiff

1 presented regarding the nature of the BitTorrent file-sharing protocol and the specificity of the
2 allegations regarding the Doe defendants' alleged infringement of the protected work. Both of these
3 factors guide the Court's joinder analysis in this matter as well.
4     Reviewing Plaintiff's Application and supporting materials, Plaintiff has provided a fairly
5 detailed explanation about how the BitTorrent protocol operates. *See* Nicolini Decl. ¶¶ 6, 7, 22. Mr.
6 Nicolini explains:

> P2P networks distribute infringing copies of motion pictures (and works in other forms such as music and books) with file sharing software such as BitTorrent as follows: The process begins with one user accessing the Internet through an Internet Service Provider ("ISP") and intentionally making a digital file of the work available on the Internet to the public from his or her computer. This first file is often referred to as the first "seed." I will refer to the person making this seed available as the "original seeder." Persons seeking to download such a work also access the Internet through an ISP (which may or may not be the same ISP as used by the original seeder) and seek out the work on a P2P network. With the availability of the seed, other users, who are referred to as "peers," access the Internet and request the file (by searching for its title or even searching for the torrent's "hash" - described below) and engage the original seeder and/or each other in a group, sometimes referred to as a "swarm," and begin downloading the seed file. In turn, as each peer receives portions of the seed, most often that peer makes those portions available to other peers in the swarm. Therefore, each peer in the swarm is at least copying and is usually distributing, as a follow-on seeder, copyrighted material at the same time. Of the over 20,000 infringers tracked in connection with several cases currently pending, at least 95% of the Doe defendants were uploading (i.e., distributing) illegal copies of our clients' motion pictures at the moment indicated by the Timestamp in the respective Exhibit A appended to each complaint, which is also true for this case. In P2P networks, the infringement may continue even after the original seeder has gone completely offline. Any BitTorrent client may be used to join a swarm. As more peers join a swarm at any one instant, they obtain the content at even greater speeds because of the increasing number of peers simultaneously offering the content as seeders themselves for unlawful distribution. As time goes on, the size of the swarm varies, yet it may endure for a long period, with some swarms enduring for 6 months to well over a year depending on the popularity of a particular motion picture.

26 Nicolini Decl. ¶ 6. Based on this information, the Court finds that Plaintiff has at least presented a
27 reasonable basis to argue that the BitTorrent protocol functions in such a way that peers in a single
28

swarm downloading or uploading a piece of the same seed file may fall within the definition of "same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule 20(a)(1)(A).

Further, the Court finds that Plaintiff has provided enough specificity to make a preliminary determination that the 1,474 Doe Defendants here were part of the same swarm. Reviewing Exhibit A to Plaintiff's Complaint, Defendants' alleged infringing activity occurred over a period of over nine months, from August 2010 through June 2011. *See* Compl, Ex. A. While this period might seem protracted, with respect to any particular swarm, the hash (an alphanumeric representation of a digital file) associated with the copied file's torrent file remains the same within that swarm. Nicolini Decl. ¶ 6. For each of the 1,474 Doe Defendants, Plaintiff has provided an identical hash. Compl, Ex. A. Based on these allegations, Plaintiff's claims against the Doe Defendants appear logically related. Each putative Defendant is a possible source for Plaintiff's copyrighted work, and may be responsible for distributing the work to the other putative Defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material. *See Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically related" and this test is "flexible."). While the Doe Defendants may be able to rebut these allegations later, Plaintiff has sufficiently alleged that its claims against the defendants potentially stem from the same transaction or occurrence, and are logically related. *See Arista Records LLC v. Does 1-19*, 551 F. Supp.2d 1, 11 (D.D.C.) ("While the Court notes that the remedy for improper joinder is severance and not dismissal, . . . the Court also finds that this inquiry is premature without first knowing Defendants' identities and the actual facts and circumstances associated with Defendants' conduct."). Plaintiff has made a preliminary showing that these Defendants were present in the same *Big Bang Theory: A XXX Parody* swarm on BitTorrent and shared pieces of the same seed file containing *Big Bang Theory: A XXX Parody*.

2. Question of Law or Fact Common to All Defendants

Rule 20(a)(2)(B) requires Plaintiff's claims against the putative Doe Defendants to contain a common question of law or fact. Here, Plaintiff will have to establish against each Defendant the

same legal claims concerning the validity of the copyright in *Big Bang Theory: A XXX Parody* and the infringement of the exclusive rights reserved to Plaintiff as copyright holder. Furthermore, Plaintiff alleges that the Defendants utilized the same BitTorrent file-sharing protocol to illegally distribute and download *Big Bang Theory: A XXX Parody* and, consequently, factual issues related to how BitTorrent works and the methods used by Plaintiff to investigate, uncover, and collect evidence about the infringing activity will be essentially identical for each Defendant. *See Call of the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 343 (D.D.C. 2011). The Court recognizes that each putative defendant may later present different factual and substantive legal defenses "but that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)." *Id.*

### 3. Prejudice to Any Party or Needless Delay

Finally, the Court assesses whether joinder would prejudice the parties or result in needless delay. Joinder in a single case of the putative defendants who allegedly infringed the same copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative defendants. *Id.* at 344; *London–Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass. 2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to share copyrighted sound recordings and the discovery of defendants' identities through the use of a Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if any, that other John Does have raised.").

Here, Plaintiff is currently obtaining identifying information from ISPs so that they can properly name and serve the defendants. If the Court were to consider severance at this juncture, Plaintiff would face significant obstacles in its efforts to protect its copyright from illegal file-sharers and this would only needlessly delay the case. Plaintiff would be forced to file 1,474 separate lawsuits, in which it would then move to issue separate subpoenas to ISPs for each defendant's identifying information. Plaintiff would additionally be forced to pay the Court separate

filing fees in each of these cases, which would further limit its ability to protect its legal rights. "This would certainly not be in the 'interests of convenience and judicial economy,' or 'secure a just, speedy, and inexpensive determination of the action.'" *Call of the Wild*, 770 F. Supp. 2d at 334 (citation omitted) (declining to sever defendants where parties joined promotes more efficient case management and discovery and no party prejudiced by joinder).

Further, the Doe Defendants are currently identified only by their IP addresses and are not named parties. Consequently, they are not required to respond to Plaintiff's allegations or assert a defense. Defendants may be able to demonstrate prejudice once Plaintiff proceeds with its case against them, but they cannot demonstrate any harm that is occurring to them before that time. *Id.*

Thus, the Court finds that, at this preliminary stage, Plaintiff has met the requirements of permissive joinder under Rule 20(a)(2). The putative defendants are not prejudiced but likely benefitted by joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted material and seek redress from the Doe Defendants who have allegedly engaged in infringing activity. To be fair, the Court recognizes that the questions of joinder and severance must be deferred until after discovery has been authorized and any motions to quash filed. The Court is also cognizant of the logistical and administrative challenges of managing a case with numerous putative defendants, a number of whom may seek to file papers pro se. However, severing the putative defendants at this early stage is no solution to ease the administrative burden of the cases. The Court therefore declines to sever the Doe Defendants at this time.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Ex Parte Application for Expedited Discovery (Dkt. No. 5) as follows:

1. IT IS HEREBY ORDERED that Plaintiff is allowed to serve immediate discovery on Does 1-1,474's ISPs listed in Exhibit A to the Complaint by serving a Rule 45 subpoena that seeks information sufficient to identify the Doe Defendants, including the name, address, telephone number, and email address of Does 1-1,474. Plaintiff's counsel shall issue the subpoena and attach a copy of this Order.

2. IT IS FURTHER ORDERED that the ISP will have 30 days from the date of service upon them to serve Does 1-1,474 with a copy of the subpoena and a copy of this Order. The ISP may serve the Doe Defendants using any reasonable means, including written notice sent to his or her last known address, transmitted either by first-class mail or via overnight service.

3. IT IS FURTHER ORDERED that Does 1-1,474 shall have 30 days from the date of service to file any motions in this Court contesting the subpoena (including a motion to quash or modify the subpoena). If that 30-day period lapses without Does 1-1,474 contesting the subpoena, the ISP shall have 10 days to produce the information responsive to the subpoena to Plaintiff.

4. IT IS FURTHER ORDERED that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash.

5. IT IS FURTHER ORDERED that the ISP that receives a subpoena pursuant to this order shall confer with Plaintiff and shall not assess any charge in advance of providing the information requested in the subpoena. The ISP that receives a subpoena and elects to charge for the costs of production shall provide a billing summary and cost reports that serve as a basis for such billing summary and any costs claimed by the ISP.

6. IT IS FURTHER ORDERED that Plaintiff shall serve a copy of this order along with any subpoenas issued pursuant to this order to the necessary entities.

7. IT IS FURTHER ORDERED that any information disclosed to Plaintiff in response to a Rule 45 subpoena may be used by Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its complaint.

**IT IS SO ORDERED.**

Dated: August 24, 2011

Maria-Elena James
Chief United States Magistrate Judge