CHAMBER COPY

Doe #1340
I.P. Address  97.86.2.80
Defendant

United States District court
Northern District of California

New Sensations, Inc.,

      Plaintiff

v.

Does, 1-1,474,

      Defendant

Case No. C 11-2770 MEJ

**MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND
MOTION TO QUASH SUBPOENA**

To the Honorable Judge Maria-Elena James:

I respectfully move to dismiss and/or quash a portion of the subpoena on the grounds that the

court lacks personal jurisdiction over me with regard to the subpoena dated September 14, 2011,

which directs Charter Communications, Inc. ("Charter") to produce my identifying information.

I received a letter from my Internet service provider, dated November 2, 2011.  A redacted copy

of this letter, labeled Exhibit A, is attached to this Motion to Dismiss/Quash.  The letter states

that my I.P. Address is 97.86.2.80 and advises that I have 30 days to file a motion to quash the

subpoena and object to the production of personal information.  As a result, I now submit this

motion within the 30 day period, by mail.

Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Quash Subpoena
Case No. C 11-2770 MEJ

I am not a resident of the State of California. A court's exercise of personal jurisdiction over a non-resident defendant must satisfy both the applicable state long-arm statute and constitutional principles of due process. *Selhorst v. Alward Fisheries, LLC* 2011 WL 4974568 (N.D.Cal.) at 1. Because the California long-arm statue is coextensive with federal due process, "the jurisdictional analysis under the state law and federal due process are the same." *Id.* quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Jurisdiction over a defendant may be general or specific in nature. For general jurisdiction to exist a defendant must engage in continuous and systematic general contacts that approximate physical presence in the forum state. *Id.* Even if all of Plaintiff's allegations are taken as true, my alleged conduct does not meet this standard.

The Ninth Circuit has established a three-part test to determine whether a court has specific personal jurisdiction. First, the non-resident defendant must either purposefully direct his activities towards the forum state, or purposefully avail himself of the privilege of conducting business in the forum state, thereby invoking the protections of its laws. *Selhorst* 2011 WL 4974568 at 2. Second, the claim must arise out of or relate to the defendant's forum-related activities. *Id.* Third, the exercise of jurisdiction must be reasonable, comporting with fair play and substantial justice. *Id.* Again, even if Plaintiff's allegations are taken as true, my alleged conduct does not meet this standard. In cases of alleged copyright infringement California courts have focused on the "purposeful direction" element of the first part of the three-part test, requiring that the defendant commit an intentional act expressly aimed at the forum state causing harm that the defendant knows is likely to be suffered in the forum state. *Mavrix Photo, Inc. v.*

*Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). Much more than the mere copying of material protected by copyright has been required in copyright infringement cases where California courts have exercised jurisdiction over non-resident defendants. *See, e.g. Mavrix Photo, Inc.* 647 F.3d (defendant made unauthorized copies of plaintiff's images and used those images on defendant's web site to compete with plaintiff in the California market); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011)(defendant made unauthorized copies of plaintiff's course catalogs and course descriptions and used those copies on defendant's web site to solicit business from residents of California).

I do not reside, work, or conduct business in California; have not contracted to supply services in California; the IP address that is identified as assigned to me is not within the jurisdiction of the court; I have no interest in nor use any real property in California; I do not consent to personal jurisdiction in California; I have no normal business or personal contacts in California; I have had no recent contact with California with the exception of receiving the subpoena at issue here; I have no other significant relationship with California; I was not aware until reviewing the complaint filed in this action that Plaintiff is a corporation incorporated in California with its principal place of business in California. Consequently, it is improper and against the traditional notions of fair play and substantial justice to subject me to this lawsuit in this jurisdiction. It would also be improper for Charter to be required to turn over my identifying information to Plaintiff.

I respectfully request that I be dismissed from this lawsuit and the subpoena should be quashed and/or dismissed because there is an insufficient relationship between Plaintiff's claims(s) and my contacts with California to justify the Court's jurisdiction over me.

Although I am proceeding in this matter *pro se*, I did consult with an attorney and my pleadings were prepared after receiving assistance from an attorney.

Respectfully submitted,

Doe #1340

(I.P. Address 97.86.2.80)

Pro Se

I would also like to certify that on this **23** day of November, 2011, I mailed, via first-class prepaid postage, a true and correct copy of the foregoing Motion to Proceed Anonymously to:

Clerk's Office
United States District Court
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102

Ira M. Siegel
Law Offices of Ira M. Siegel
433 N. Camden Drive
Suite 970
Beverly Hills, CA 90210
Attorney for Plaintiff

Doe 1340

Doe #1340

I.P. Address 97.86.2.80

Pro Se

Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Quash Subpoena
Case No. C 11-2770 MEJ

November 18, 2011

From:   ID Number: 1310,

To:   United States District Court of Northern District of California

CC:   Charter Communications Inc, Legal Department, 12405 Powerscourt Dr, St Louis, MO 63131

References:

  Court Case: New Sensations, Inc. (the Plaintiff) v. Does 1-1474, Court Case No. CV-11-2770-MEJ

  Court: United States District Court for Northern District of California

  Copyrighted Work: Big Bang Theory A XXX Parody

  Indentifying Information:    Accountholder Name, Address(es), Telephone Number, Email Address(es), Modem MAC address.

  Charter Case Number: 11-3730

  ID Number: 1310

Subject: Law suit Objection

First and foremost I am innocent of all charges and allegations to this law suit.    I have never heard of the down load in question until I received the paperwork from Charter Communications.

I object to having Charter Communications releasing my personal information to include my name, address, telephone number, and my email address to the courts, the plaintiff's lawyer(s), or anyone else connected to this case.

Further communications will need to be handled through Charter Communications via my Charter ID Number: 1310.

Sincerely,

ID Number 1310

Doe #1340
I.P. Address  97.86.2.80
Defendant

United States District court
Northern District of California

New Sensations, Inc.,                            Case No. C 11-2770 MEJ

     Plaintiff                              **MOTION TO PROCEED
                                ANONYMOUSLY**

v.

Does, 1-1,474,

     Defendant

To the Honorable Judge Maria-Elena James:

I respectfully request that this Honorable Court permit me to proceed anonymously as Doe
#1340 and, in support of this motion, state as follows:

I recognize the importance of public access to court proceeding; however, I am not seeking to
proceed pseudonymously through the trial stage of the case, if any, but am seeking a much
narrower privilege of pseudonymously challenging the propriety of a subpoena during the
pretrial phase of the litigation.

Motion to Proceed Anonymously
Case No. C 11-2770-MEJ

On or about November 2, 2011, I received a letter from my Internet Service Provider, Charter

Communications, Inc. ("Charter"); a redacted version is attached as Exhibit A to my motion to

dismiss. The letter identifies my IP address as 97.86.2.80. Attached to the letter was a subpoena

requiring Charter to disclose my name, address, and other personally identifying information.

The letter stated that I had 30 days (from November 2, 2011) to contest the subpoena. I have

contested the subpoena by filing with this Court a Motion to Dismiss for Lack of Personal

Jurisdiction and Motion to Quash Subpoena.


Anonymity has been granted to parties in previous cases addressing parties' rights to privacy

where the injury being litigated against (the disclosure of personally identifiable information)

would be incurred should the party be required to disclose its identity. *See Roe v. Ingraham*, 364

F. Supp. 536.541 (S.D.N.Y. 1973). Such a privacy claim exists here; I cannot disclose my

identity without incurring the very injury being litigated against.


As discussed more fully in my Motion to Quash Subpoena, this Court lacks personal jurisdiction

over Doe #1340 (IP address 97.86.2.80). I respectfully request that the Court permit me to

proceed under the pseudonym Doe #1340.


Although I am proceeding in this matter *pro se*, I did consult with an attorney, and my pleadings

were prepared after receiving assistance from my attorney.


Motion to Proceed Anonymously
Case No. C 11-2770-MEJ

Respectfully submitted,

Doe #1340

(I.P. Address 97.86.2.80)

Pro Se

I would also like to certify that on this **13** day of November, 2011, I mailed, via first-class

prepaid postage, a true and correct copy of the foregoing Motion to Proceed Anonymously to:

Clerk's Office
United States District Court
450 Golden Gate Avenue, 16th Floor
San Francisco, CA 94102

Ira M. Siegel
Law Offices of Ira M. Siegel
433 N. Camden Drive
Suite 970
Beverly Hills, CA 90210
Attorney for Plaintiff

Doe 1340

Doe #1340

I.P. Address 97.86.2.80

Pro Se

Motion to Proceed Anonymously
Case No. C 11-2770-MEJ

Untied States District Court Northern District of California

Plaintiff:   New Sensations Inc                              Case No: CV-11-2770-MEJ

vs.                                                          MOTION TO DISMISS CLAIMS

Defendants: Does 1-1474                                      AGAINST MULTIPLE DOES

I respectfully request for this motion to be determined without oral argument at any date and time that the honorable Judge finds appropriate.

## Statement of Purpose

For the reasons set forth in the Memorandum attached hereto, I respectfully request this Court dismiss the claims against multiple Does, and have the related subpoena issued to Charter Communications Inc modified to not allow discovery of multiple Does.

## Memorandum of points and authorities

Plaintiff filed this copyright infringement case on August 24, 2011, alleging that 1,474 Doe defendants illegally reproduced, distributed and publicly shared copies of plaintiff's copyright protected works on a peer-to-peer network, "Big Bang Theory: A XXX Parody".

After the Court granted plaintiff leave to serve early discovery in Earthlink, Inc. on Case No. 10-3851, the Court considered a motion to quash filed by a subscriber, "Doe Defendant 4."   See Case

Case 3: 10-CV-03647-MEJ      Document 16      Filed 03/14/11      Page 2 of 3

otherwise acted in concert.   Id. at 5.   Instead, the only specific factual allegations were that the Doe defendants used the same peer-to-peer network to reproduce plaintiff's works on a different dates. Those allegations, however, were insufficient as a matter of law to support joinder and allow plaintiff to benefit from filing one, as opposed to many, lawsuits, Id. at 5.   In so ruling, the Court relied on other cases where courts, faced with similarly deficient allegations, sua sponte severed the claims of the misjoined defendants and dismissed the severed defendants. Id. at 5 (citing Laface records, LLC v does 1-38, 2008 U>S> Dist. LEXIS 14544 (E.D.N.C. Feb 27, 2008); Interscope Records v Does 1-25, 2004 U>S> Dist LEXIS 27782 (M.D. fla. Apr 1, 2004); BMG Music v. Does, 2006 U.S. Dist LEXIS 53237, No. 06-01579 (Patel, J.) (N.D. Calif July 31, 2006); Twentieth Century Fox Film Corp v. Does 1-12, No. C 04-04862 WHA (N.D. Calif Nov 16, 2004) (Alsup, J.).

The Court also issued a similar ruling on the Case No. 10-04382 and ordered Does 2 through 435 to be SERVED and DISMISSED from that action.

Through further investigations of my own I found a web site solely dedicated to this type of lawsuit, www.fightcopyrighttrolls.com, where I found a copy of a similar dismissal letter that I am using by their permission that was sent to your Court.   It is amazing that the lawyer, Ira Siegel was personally mentioned in this site where he represents plaintiffs to gain our names, address, phone number only to use them to extort and harass people into paying them large sums of money to settle outside of court. I also talked to a few computer IT Specialist, one who is a manager in a large national company and I was told that there are many ways an IP address can be obtained legally or illegally without my permission or knowledge and that Charter Communications Inc can assign and/or reassign my IP address at any time they deem necessary.   I called Charter Communication and asked to let me assign my own password to

the IP address assigned to the modem they own and is my house and I was told that they cannot do that and that they manage the security of the IP address.    So I have no control of my IP address by Charter Communications and must rely solely on them for security and any bookkeeping practices they use to manage the IP address.    I also learned that steeling ones IP address is a known way for someone with this ability to hide themselves and to conduct such copyright activities and hide themselves from the law.      As far as I can see, there are just to many ways for my IP address to be compromised and that I have no way to control the security of my IP address to be held liable to any wrong doings or to have anyone to receive my personal information (name, address, or phone number).

This complaint suffers from the same defects the Court identified in IO Group, Inc v. Does 1-19, Case No. 10-3851, and IO Group, Inc v. Does 1-435, Case No. 10-04382.    There are no facts to support the assertion that defendants conspired with each other to reproduced plaintiff's works on Big Bang Theory: A XXX Parody and the allegations that defendants simply used the same peer-to-peer network to download plaintiff's works - on many different days at many different times - is insufficient to allow plaintiff to litigate against a thousand different Does in one action.    Consequently, Does in this case should be <u>dismissed</u> on the grounds similar to those in aforementioned cases.    In this light, the Order authorizing early discovery and the issuance of a subpoena on Charter Communications Inc deemed overbroad (Docket no. 5).    The subpoena should be modified to not allow discovery of multiple Does, and Charter Communication Inc should be ordered to not discover multiple Does.

Dated this 19th day of November, 2011.

Respectfully submitted

Possible John doe, pre se

Case: C-11-2770-MEJ      Document9    Filed 8/24/11

ATTACHMENT B

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9              Northern District of California

10

11   NEW SENSATIONS, INC.,                    No. C 11-2770 MEJ

12                      Plaintiff,            **ORDER GRANTING PLAINTIFF'S**
13         v.                                 **EX PARTE APPLICATION FOR**
                                              **LEAVE TO TAKE LIMITED**
14   DOES 1-1,474,                            **EXPEDITED DISCOVERY**

15                      Defendants.           **Docket No. 5**

16

17   _____/

18                        **I.   INTRODUCTION**

19        Plaintiff New Sensations, Inc. ("Plaintiff") has filed an *ex parte* Application pursuant to

20   Federal Rules of Civil Procedure 26 and 45, requesting leave to take expedited discovery to

21   determine the identity of 1,474 Doe Defendants (collectively, "Defendants") named in this action.

22   Dkt. No. 5 ("Pl.'s App."). For the reasons provided below, the Court **GRANTS** Plaintiff's

23   Application.

24                        **II.   BACKGROUND**

25        On June 7, 2011, Plaintiff filed this lawsuit against 1,474 Doe Defendants, alleging that

26   Defendants illegally reproduced and distributed a work subject to Plaintiff's exclusive license, ("*Big*

27   *Bang Theory: A XXX Parody*"), using an internet peer-to-peer ("P2P") file sharing network known

28   as BitTorrent, and thereby violated the Copyright Act, 17 U.S.C. § 101-1322. Compl. ¶¶ 6-15, Dkt.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  No. 1. Plaintiff alleges that because the alleged infringement occurred on the Internet, Defendants
2  acted under the guise of their Internet Protocol ("IP") addresses rather than their real names. *Id.* at ¶
3  10; Pl.'s App. at 5-6. As a result, Plaintiff contends that it cannot determine Defendants' true
4  identities without procuring the information from Defendants' respective Internet Service Providers
5  ("ISPs"), which can link the IP addresses to a real individual or entity. Pl.'s App. at 6.
6  Consequently, Plaintiff asks the Court to grant it expedited discovery to issue subpoenas to the
7  relevant ISPs so that the ISPs will produce the name, address, telephone number, and email address
8  for each Defendant. *Id.* at 25, Ex. 1.

## III. LEGAL STANDARD

10  Pursuant to Federal Rule of Civil Procedure ("Rule") 26(d)(1), a court may authorize early
11  discovery before the Rule 26(f) conference for the parties' convenience and in the interest of justice.
12  Courts within the Ninth Circuit generally use a "good cause" standard to determine whether to
13  permit such discovery. *See, e.g., Apple Inc. v. Samsung Electronics Co., Ltd.*, 2011 WL 1938154, at
14  *1 (N.D. Cal. May 18, 2011); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276
15  (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in
16  consideration of the administration of justice, outweighs the prejudice to the responding party."
17  *Semitool*, 208 F.R.D. at 276. The court must perform this evaluation in light of "the entirety of the
18  record . . . and [examine] the reasonableness of the request in light of all the surrounding
19  circumstances." *Id.* at 275 (citation & quotation marks omitted). In determining whether there is
20  good cause to allow expedited discovery to identify anonymous internet users named as doe
21  defendants, courts consider whether: (1) the plaintiff can identify the missing party with sufficient
22  specificity such that the Court can determine that defendant is a real person or entity who could be
23  sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive
24  defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the
25  plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant
26  through discovery such that service of process would be possible. *Columbia Ins. Co. v.*
27  *seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

28

2

Attachment B - Page 2 of 12

## IV.  DISCUSSION

**A.  Whether Plaintiff has Identified the Defendants with Sufficient Specificity**

Under the first factor, the Court must examine whether Plaintiff has identified the Defendant with sufficient specificity, demonstrating that each Defendant is a real person or entity who would be subject to jurisdiction in this Court. *See id.* at 578.  Here, Plaintiff proffers that it retained Copyright Enforcement Group, LLC ("CEG"), which utilized forensic software to identify Defendants' IP addresses on the date and time that they engaged in the alleged distribution of *Big Bang Theory: A XXX Parody* via the BitTorrent protocol, and has compiled the information into a log attached as Exhibit A to Plaintiff's Complaint.  Pl.'s App. at 9; Decl. of Jon Nicolini ¶¶ 10-16, Dkt. No. 5-1.  Plaintiff explains that Defendants gained access to the Internet only by setting up an account through various ISPs, and that by providing the ISPs the information detailed in Exhibit A, the ISPs can look up the Defendants' identities by reviewing their respective subscriber activity logs.  Nicolini Decl. ¶¶ 18-20.  Thus, the Court finds that Plaintiff has come forward with sufficient information demonstrating that the Defendants are real persons or entities who may be sued in federal court. *See MCGIP, LLC v. Does 1-149*, 2011 WL 3607666, at *2 (N.D. Cal. Aug. 15, 2011) (finding that the plaintiff had identified the Doe defendants with sufficient specificity by submitting a chart listing each of the defendants by the IP address assigned to them on the day it alleged the particular defendant engaged in the infringing conduct).

**B.  Whether Plaintiff has Identified All Previous Steps to Locate Defendants**

Under the second factor, the Court must assess the prior steps Plaintiff has taken to locate the Defendants. *See Columbia Ins. Co.*, 185 F.R.D. at 579.  "This element is aimed at ensuring that plaintiffs make a good faith effort to comply with the requirements of service of process and specifically identifying defendants." *Id.*  Here, Plaintiff contends that it has exhausted all possible means to find the Defendants' names, addresses, phone numbers, and email addresses.  Pl.'s App. at 9.  In support, Plaintiff cites to paragraphs 18 through 20 of Mr. Nicolini's Declaration. *Id.*  Reviewing Mr. Nicolini's testimony, he states CEG's System inspects file-sharing networks for computers that are distributing at least a substantial portion of a copy of a copyrighted work owned

3

1   by Plaintiff, and when CEG finds such a computer, CEG's System also collects publicly accessible

2   information, including the time and date the infringer was found, the IP address assigned to the

3   infringer's computer, the size of the accused file, and the name of the ISP having control of the IP

4   address. Nicolini Decl. ¶ 18. Mr. Nicolini states that, because of the partially anonymous nature of

5   the P2P Internet distribution system used by Defendants, CEG is unable to determine their true

6   names, street addresses, telephone numbers, and email addresses. *Id.*

7        First, to locate swarms[1] where peers were distributing *Big Bang Theory: A XXX Parody*,

8   CEG utilizes its data collection system to find digital files on the Internet that have the same title as

9   the copyrighted work. *Id.* ¶¶ 11, 14. Mr. Nicolini states that, in this case, the P2P network on which

10   CEG found unauthorized distribution of *Big Bang Theory: A XXX Parody* was a BitTorrent network.

11   *Id.* ¶ 16. CEG then downloads a full copy of the file, which is then forwarded to a two-stage

12   verification computer process and identified by two people. *Id.* ¶ 17. The process compares the

13   digital data in the suspect file with digital data in a digital copy of the motion picture obtained from

14   Plaintiff. *Id.* If the suspect file matches the authorized file, then the two people play the suspect file

15   and watch the motion picture. *Id.* If both people confirm that a substantial portion of the motion

16   picture in the suspect file is substantially the same as a corresponding portion of *Big Bang Theory: A*

17   *XXX Parody*, then particular unique data (often referred to as metadata) in the suspect file is noted

18   by CEG's System, and the System searches for additional computers on P2P networks that have the

19   same suspect file. *Id.*

20        After locating and inspecting computers that are distributing at least a substantial portion of a

21   copy of *Big Bang Theory: A XXX Parody*, Mr. Nicolini states that CEG's System collects (a) the

22   time and date the infringer was found, (b) the time(s) and date(s) when a portion of the accused file

23

24       [1]P2P networks distribute infringing copies of copyrighted works with file sharing software

25   such as BitTorrent when one user accesses the Internet through an ISP and intentionally makes a
digital file of a work available to the public from his or her computer. Nicolini Decl. ¶ 6. This file

26   is referred to as the first "seed." *Id.* Other users, who are referred to as "peers," then access the
Internet and request the file. *Id.* These users engage each other in a group, referred to as a "swarm,"

27   and begin downloading the seed file. *Id.* As each peer receives portions of the seed, that peer makes

28   those portions available to other peers in the swarm. *Id.*

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1   was downloaded successfully to the accused infringer's computer, (c) the time and date the infringer

2   was last successfully connected to via the P2P network with respect to the infringer's computer's

3   downloading and/or uploading the accused file to the Internet, (d) the IP address assigned to the

4   infringer's computer, (e) the P2P software application used by the infringer and the port number

5   used by the infringer's P2P software, (f) the size of the accused file, (g) the percent of the file

6   downloaded by CEG from the infringer's computer, (h) the percent of the accused file on the

7   infringer's

8   computer which is available at that moment for copying by other peers, and (i) any relevant

9   transfer errors. *Id.* ¶ 18. In addition, CEG uses available databases to record the name of the ISP

10   having control of the IP address and the state (and often the city or county) associated with that IP

11   address. *Id.*

12       Based on Mr. Nicolini's explanation of the foregoing steps as utilized to investigate

13   Defendants' activity with respect to *Big Bang Theory: A XXX Parody* on the BitTorrent protocol, the

14   Court finds that Plaintiff has sufficiently described its efforts to identify Defendants.

15   **C.    Whether Plaintiff's Suit Against Defendants Could Withstand a Motion to Dismiss**

16       Under the third factor, the inquiry shifts to the substance of Plaintiff's claims and analyzes

17   whether Plaintiff's Complaint would likely survive a motion to dismiss. *See Columbia Ins. Co.*, 185

18   F.R.D. at 579. In its Complaint, Plaintiff has asserted a federal copyright infringement claim. To

19   state a claim for copyright infringement, Plaintiff must establish: (1) ownership of a valid copyright,

20   and (2) copying of constituent elements of the copyrighted work that are original. *Rice v. Fox*

21   *Broad. Corp.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*,

22   499 U.S. 340, 361 (1991)). "To be liable for direct infringement, one must 'actively engage in' and

23   'directly cause' the copying." *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1199

24   (N.D. Cal. 2004). Reviewing Plaintiff's Complaint, Plaintiff has adequately alleged that *Big Bang*

25   *Theory: A XXX Parody* is the subject of a valid Certificate of Registration issued by the United

26   States Copyright Office and that Plaintiff is the exclusive rightsholder of the distribution and

27   reproduction rights of *Big Bang Theory: A XXX Parody*. Compl. ¶¶ 7, 8. Plaintiff has also alleged

28

5

1     that the Defendants reproduced and distributed *Big Bang Theory: A XXX Parody* via BitTorrent to

2     numerous third parties. Compl. ¶¶ 10-12. Additionally, Plaintiff has alleged that Defendants

3     actively engaged in or directly caused the copying by completing each of the steps in the BitTorrent

4     file-sharing protocol, including intentionally downloading a torrent file particular to *Big Bang*

5     *Theory: A XXX Parody*, loading that torrent file into the BitTorrent client, entering a BitTorrent

6     swarm particular to *Big Bang Theory: A XXX Parody*, and ultimately, downloading and uploading

7     pieces of a *Big Bang Theory: A XXX Parody* file to eventually obtain a whole copy of the file. *Id.*

8     Based on these allegations, the Court finds that Plaintiff has pled a *prima facie* case of copyright

9     infringement and set forth sufficient supporting facts to survive a motion to dismiss.

10     **D.    Whether there is a Reasonable Likelihood of Being Able to Identify Defendants**

11          The fourth factor examines whether Plaintiff has demonstrated that there is a reasonable

12     likelihood that the discovery it requests will lead to the identification of Defendants such that it may

13     effect service of process. *See Columbia Ins.*, 185 F.R.D. at 580. As indicated above, Plaintiff

14     contends that the key to locating the Defendants is through the IP addresses associated with the

15     alleged activity on BitTorrent. Specifically, Plaintiff contends that because ISPs assign a unique IP

16     address to each subscriber and retain subscriber activity records regarding the IP addresses assigned,

17     the information sought in the subpoena will enable Plaintiff to serve Defendants and proceed with

18     this case. *See* Pl.'s App. at 6; Nicolini Decl. ¶¶ 19-20. Taking this into account, the Court finds that

19     Plaintiff has made a sufficient showing as to this factor.

20     **E.    Summary**

21          Taking the foregoing factors into consideration, the Court finds that Plaintiff has

22     demonstrated that good cause exists to grant it leave to conduct early discovery. Moreover, the

23     Court finds that the expedited discovery sought furthers the interests of justice and presents minimal

24     inconvenience to the ISPs to which the subpoenas are directed. Thus, the expedited discovery is in

25     line with Rule 26(d).

26     **F.    Joinder of 1,474 Defendants**

27          Having found that expedited discovery is appropriate, the question becomes whether the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

6

1    discovery sought is proper as to all 1,474 Defendants. Plaintiff presents a lengthy discussion in its
2    Application as to why its decision to name join 1,474 Defendants is justified under Rule 20. *See*
3    Pl.'s App. at 11-19. Under Rule 20, defendants may be joined in one action when claims arise from
4    the same transaction or occurrence or series of transactions or occurrences, and any question of law
5    or fact in the action is common to all defendants. Fed. R. Civ. P. 20(a)(2). The permissive joinder
6    rule "is to be construed liberally in order to promote trial convenience and to expedite the final
7    determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v.*
8    *Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1997). The purpose of Rule 20(a) is to
9    address the "broadest possible scope of action consistent with fairness to the parties; joinder of
10   claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383
11   U.S. 715, 724 (1966). Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right
12   to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the
13   same transaction or occurrence, and (2) some question of law or fact common to all the parties must
14   arise in the action. Fed. R. Civ. P. 20(a). Both of these requirements must be satisfied in order to
15   justify party joinder under Rule 20(a). *Id.* In situations of misjoinder of parties, Rule 21 provides
16   that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."

17              1.    Same Transaction, Occurrence, or Series of Transactions or Occurrences

18         "The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of
19   transactions or occurrences' to require a degree of factual commonality underlying the claims."
20   *Bravado Int'l Group Merchandising Servs. v. Cha*, 2010 WL 2650432, at *4 (C.D. Cal. June 30,
21   2010) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir.1997)). Typically, this means that a
22   party "must assert rights . . . that arise from related activities-a transaction or an occurrence or a
23   series thereof." *Id.* (citation omitted). Recently, courts in this District – as well as several other
24   federal districts – have come to varying decisions about the proprietary of joining multiple
25   defendants in BitTorrent infringement cases. *See MCGIP, LLC v. Does 1-149*, 2011 WL 3607666,
26   at 3 (N.D. Cal. Aug. 15, 2011) (listing a sample of recent decisions). This Court has carefully
27   reviewed such decisions and notes that they are highly dependent on the information the plaintiff
28

1 presented regarding the nature of the BitTorrent file-sharing protocol and the specificity of the

2 allegations regarding the Doe defendants' alleged infringement of the protected work. Both of these

3 factors guide the Court's joinder analysis in this matter as well.

4     Reviewing Plaintiff's Application and supporting materials, Plaintiff has provided a fairly

5 detailed explanation about how the BitTorrent protocol operates. *See* Nicolini Decl. ¶¶ 6, 7, 22. Mr.

6 Nicolini explains:

7         P2P networks distribute infringing copies of motion pictures (and
works in other forms such as music and books) with file sharing
8         software such as BitTorrent as follows: The process begins with one
user accessing the Internet through an Internet Service Provider
9         ("ISP")
and intentionally making a digital file of the work available on the
10         Internet to the public from his or her computer. This first file is often
referred to as the first "seed." I will refer to the person making this
11         seed available as the "original seeder." Persons seeking to download
such a work also access the Internet through an ISP (which may or
12         may not be the same ISP as used by the original seeder) and seek out
the work on a P2P network. With the availability of the seed, other
13         users, who are referred to as "peers," access the Internet and request
the file (by searching for its title or even searching for the torrent's
14         "hash" - described below) and engage the original seeder and/or each
other in a group, sometimes referred to as a "swarm," and begin
15         downloading the
seed file. In turn, as each peer receives portions of the seed, most often
16         that peer makes those portions available to other peers in the swarm.
Therefore, each peer in the swarm is at least copying and is usually
17         distributing, as a follow-on seeder, copyrighted material at the same
time. Of the over 20,000 infringers tracked in connection with several
18         cases currently pending, at least 95% of the Doe defendants were
uploading (i.e., distributing) illegal copies of our clients' motion
19         pictures at the moment indicated by the Timestamp in the respective
Exhibit A appended to each complaint, which is also true for this case.
20         In P2P networks, the infringement may continue even after the
original seeder has gone completely offline. Any BitTorrent client may
21         be used to join a swarm. As more peers join a swarm at any one
instant, they obtain the content at even greater speeds because of the
22         increasing number of peers simultaneously offering the content as
seeders
23         themselves for unlawful distribution. As time goes on, the size of the
swarm varies, yet it may endure for a long period, with some swarms
24         enduring for 6 months to well over a year depending on the popularity
of a particular motion picture.

25

26 Nicolini Decl. ¶ 6. Based on this information, the Court finds that Plaintiff has at least presented a

27 reasonable basis to argue that the BitTorrent protocol functions in such a way that peers in a single

28

8

UNITED STATES DISTRICT COURT
For the Northern District of California

1  swarm downloading or uploading a piece of the same seed file may fall within the definition of

2  "same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule

3  20(a)(1)(A).

4          Further, the Court finds that Plaintiff has provided enough specificity to make a preliminary

5  determination that the 1,474 Doe Defendants here were part of the same swarm. Reviewing Exhibit

6  A to Plaintiff's Complaint, Defendants' alleged infringing activity occurred over a period of over

7  nine months, from August 2010 through June 2011. *See* Compl, Ex. A. While this period might

8  seem protracted, with respect to any particular swarm, the hash (an alphanumeric representation of a

9  digital file) associated with the copied file's torrent file remains the same within that swarm.

10  Nicolini Decl. ¶ 6. For each of the 1,474 Doe Defendants, Plaintiff has provided an identical hash.

11  Compl, Ex. A. Based on these allegations, Plaintiff's claims against the Doe Defendants appear

12  logically related. Each putative Defendant is a possible source for Plaintiff's copyrighted work, and

13  may be responsible for distributing the work to the other putative Defendants, who are also using the

14  same file-sharing protocol to copy the identical copyrighted material. *See Disparte v. Corporate*

15  *Executive Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically

16  related" and this test is "flexible."). While the Doe Defendants may be able to rebut these

17  allegations later, Plaintiff has sufficiently alleged that its claims against the defendants potentially

18  stem from the same transaction or occurrence, and are logically related. *See Arista Records LLC v.*

19  *Does 1–19*, 551 F. Supp.2d 1, 11 (D.D.C.) ("While the Court notes that the remedy for improper

20  joinder is severance and not dismissal, . . . the Court also finds that this inquiry is premature without

21  first knowing Defendants' identities and the actual facts and circumstances associated with

22  Defendants' conduct."). Plaintiff has made a preliminary showing that these Defendants were

23  present in the same *Big Bang Theory: A XXX Parody* swarm on BitTorrent and shared pieces of the

24  same seed file containing *Big Bang Theory: A XXX Parody*.

25          2.      Question of Law or Fact Common to All Defendants

26          Rule 20(a)(2)(B) requires Plaintiff's claims against the putative Doe Defendants to contain a

27  common question of law or fact. Here, Plaintiff will have to establish against each Defendant the

28

9

1   same legal claims concerning the validity of the copyright in *Big Bang Theory: A XXX Parody* and

2   the infringement of the exclusive rights reserved to Plaintiff as copyright holder. Furthermore,

3   Plaintiff alleges that the Defendants utilized the same BitTorrent file-sharing protocol to illegally

4   distribute and download *Big Bang Theory: A XXX Parody* and, consequently, factual issues related

5   to how BitTorrent works and the methods used by Plaintiff to investigate, uncover, and collect

6   evidence about the infringing activity will be essentially identical for each Defendant. *See Call of*

7   *the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 343 (D.D.C. 2011). The Court

8   recognizes that each putative defendant may later present different factual and substantive legal

9   defenses "but that does not defeat, at this stage of the proceedings, the commonality in facts and

10  legal claims that support joinder under Rule 20(a)(2)(B)." *Id.*

11          3.      Prejudice to Any Party or Needless Delay

12          Finally, the Court assesses whether joinder would prejudice the parties or result in needless

13  delay. Joinder in a single case of the putative defendants who allegedly infringed the same

14  copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative

15  defendants. *Id.* at 344; *London–Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass.

16  2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve

17  similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to

18  share copyrighted sound recordings and the discovery of defendants' identities through the use of a

19  Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative

20  efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if

21  any, that other John Does have raised.").

22          Here, Plaintiff is currently obtaining identifying information from ISPs so that they can

23  properly name and serve the defendants. If the Court were to consider severance at this juncture,

24  Plaintiff would face significant obstacles in its efforts to protect its copyright from illegal

25  file-sharers and this would only needlessly delay the case. Plaintiff would be forced to file 1,474

26  separate lawsuits, in which it would then move to issue separate subpoenas to ISPs for each

27  defendant's identifying information. Plaintiff would additionally be forced to pay the Court separate

28

10

1  filing fees in each of these cases, which would further limit its ability to protect its legal rights.

2  "This would certainly not be in the 'interests of convenience and judicial economy,' or 'secure a

3  just, speedy, and inexpensive determination of the action.'" *Call of the Wild*, 770 F. Supp. 2d at 334

4  (citation omitted) (declining to sever defendants where parties joined promotes more efficient case

5  management and discovery and no party prejudiced by joinder).

6      Further, the Doe Defendants are currently identified only by their IP addresses and are not

7  named parties. Consequently, they are not required to respond to Plaintiff's allegations or assert a

8  defense. Defendants may be able to demonstrate prejudice once Plaintiff proceeds with its case

9  against them, but they cannot demonstrate any harm that is occurring to them before that time. *Id.*

10      Thus, the Court finds that, at this preliminary stage, Plaintiff has met the requirements of

11  permissive joinder under Rule 20(a)(2). The putative defendants are not prejudiced but likely

12  benefitted by joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted

13  material and seek redress from the Doe Defendants who have allegedly engaged in infringing

14  activity. To be fair, the Court recognizes that the questions of joinder and severance must be

15  deferred until after discovery has been authorized and any motions to quash filed. The Court is also

16  cognizant of the logistical and administrative challenges of managing a case with numerous putative

17  defendants, a number of whom may seek to file papers pro se. However, severing the putative

18  defendants at this early stage is no solution to ease the administrative burden of the cases. The Court

19  therefore declines to sever the Doe Defendants at this time.

20  ## V. CONCLUSION

21      For the reasons stated above, the Court **GRANTS** Plaintiff's Ex Parte Application for

22  Expedited Discovery (Dkt. No. 5) as follows:

23      1. IT IS HEREBY ORDERED that Plaintiff is allowed to serve immediate discovery on

24  Does 1-1,474's ISPs listed in Exhibit A to the Complaint by serving a Rule 45 subpoena that seeks

25  information sufficient to identify the Doe Defendants, including the name, address, telephone

26  number, and email address of Does 1-1,474. Plaintiff's counsel shall issue the subpoena and attach a

27  copy of this Order.

28

11

**Attachment B - Page 11 of 12**

UNITED STATES DISTRICT COURT
For the Northern District of California

1     2. IT IS FURTHER ORDERED that the ISP will have 30 days from the date of service upon

2 them to serve Does 1-1,474 with a copy of the subpoena and a copy of this Order. The ISP may

3 serve the Doe Defendants using any reasonable means, including written notice sent to his or her last

4 known address, transmitted either by first-class mail or via overnight service.

5     3. IT IS FURTHER ORDERED that Does 1-1,474 shall have 30 days from the date of

6 service to file any motions in this Court contesting the subpoena (including a motion to quash or

7 modify the subpoena). If that 30-day period lapses without Does 1-1,474 contesting the subpoena,

8 the ISP shall have 10 days to produce the information responsive to the subpoena to Plaintiff.

9     4. IT IS FURTHER ORDERED that the subpoenaed entity shall preserve any subpoenaed

10 information pending the resolution of any timely-filed motion to quash.

11     5. IT IS FURTHER ORDERED that the ISP that receives a subpoena pursuant to this order

12 shall confer with Plaintiff and shall not assess any charge in advance of providing the information

13 requested in the subpoena. The ISP that receives a subpoena and elects to charge for the costs of

14 production shall provide a billing summary and cost reports that serve as a basis for such billing

15 summary and any costs claimed by the ISP.

16     6. IT IS FURTHER ORDERED that Plaintiff shall serve a copy of this order along with any

17 subpoenas issued pursuant to this order to the necessary entities.

18     7. IT IS FURTHER ORDERED that any information disclosed to Plaintiff in response to a

19 Rule 45 subpoena may be used by Plaintiff solely for the purpose of protecting Plaintiff's rights as

20 set forth in its complaint.

21     **IT IS SO ORDERED.**

22

23 Dated: August 24, 2011

24                                     Maria-Elena James
                                    Chief United States Magistrate Judge

25

26

27

28

12

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Missouri

| | | |
|---|---|---|
| New Sensations, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  CV-11-2770-MEJ |
| | ) | |
| DOES 1-1474 | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Central District of California       ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Custodian of Records, CHARTER COMMUNICATIONS (hereinafter "ISP"), Law Enforcement Paralegal
12405 Powerscourt Drive, Saint Louis, MO 63131

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

Documents sufficient to identify the names, addresses, telephone numbers, and email addresses of ISP's subscribers assigned the IP addresses identified on Attachment A on the corresponding dates at the corresponding times. You are to comply with this subpoena pursuant to the terms set forth in the Order attached hereto as Attachment B.

| Place: Law Offices of Ira M. Siegel c/o BRS | Date and Time: |
|---|---|
| 100 Chesterfield Business Parkway, 2nd Floor<br>Saint Louis, MO 63005 | November 28, 2011 at 9:00 a.m. ✴ |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are

attached. | ✴ Compliance with this subpoena may be a multi-step process pursuant to the Order attached (Attachment B).  At least the first step should be completed by October 19, 2011, with all steps completed by the date set forth under "Date and Time" above: November 28, 2011.  (See paragraphs 4 and 5 of the Order.)

Date:  September 14, 2011

        *CLERK OF COURT*
                                                OR         *Ira M. Siegel*

        _____                   _____
        *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   _____
        New Sensations, Inc.                               , who issues or requests this subpoena, are:
Ira M. Siegel, Law Offices of Ira M. Siegel, 433 N. Camden Drive, Suite 970, Beverly Hills, CA 90210, Email:
subpoena@irasiegellaw.com, Telephone: 888-406-1004



Charter Communications, Inc.
Legal Department
12405 Powerscourt Dr.
St. Louis, MO 63131
Fax: 314-909-0609

## IMPORTANT LEGAL NOTICE: PLEASE READ CAREFULLY

November 2, 2011

## *OBJECTION DEADLINE*



# December 2, 2011, 4:00 pm CT

### References Used In This Notice

- Court Case: New Sensations, Inc. (the "Plaintiff") v. Does 1-1474, Court Case No. CV-11-2770-MEJ
- Court: United States District Court for the Northern District of California
- Copyrighted Work: Big Bang Theory A XXX Parody
- Identifying Information: Accountholder Name, Address(es), Telephone Number, Email Address(es), Modem MAC address
- Charter Case Number:11-3730
- Your ID Number: 1310

Dear Sir or Madam:

Charter has received a subpoena from attorneys for the Plaintiff seeking certain information about your Charter internet account ("Account"), including the Identifying Information listed above. The Court has issued an order compelling Charter to disclose this information relating to your Charter Account. Charter respects the privacy of its subscribers, and will disclose customer information only to the extent required by law, as indicated in Charter's privacy policy on www.charter.com. Because a court order authorizes the Plaintiff to obtain this information, Charter must disclose these records unless you formally oppose disclosure in the Court by the objection deadline stated above. Copies of the court order and subpoena are attached, as well as any other documentation that may have been court-ordered to be provided with this notice.

Charter records indicate that an IP address listed on an exhibit to the subpoena was assigned to your Account at the given date and time. Below is a copy of the log that associates the IP with your Account in this format: IP Address – Modem MAC – CPE MAC – IP Lease Start Time – IP Lease End Time.
96.42.126.221 00:40:7b:6b:8e:28 94:44:52:11:61:f8 2010-11-23 04:17:06 2011-02-06 17:04:07

**Please note**: Charter cannot provide you legal representation and cannot object to the subpoena or court order on your behalf. If you wish to take action in this matter, you should contact an attorney immediately, who can advise you of your specific legal rights. If you intend to oppose the order, you should do so without delay in the court identified in the subpoena and order. **AN OBJECTION MADE SOLELY TO CHARTER IS INSUFFICIENT; OBJECTIONS MUST BE MADE DIRECTLY TO THE COURT. HOWEVER, CHARTER MUST BE NOTIFIED OF AN OBJECTION NO LATER THAN THE OBJECTION DEADLINE GIVEN ABOVE.**

If you file an opposition to the order, you or your attorney should provide a copy of the objection you submitted with the Court to Charter (attention "Legal – File-Sharing Team" via facsimile at 314-909-0609) by the objection deadline stated above so that Charter may withhold disclosure of your information. **PLEASE CLEARLY INDICATE IN YOUR COPY TO CHARTER (1) THAT YOUR OBJECTION WAS MADE TO THE COURT AND (2) PROVIDE YOUR NAME AND ADDRESS OR A COPY OF THIS LETTER, EVEN IF YOUR OBJECTION TO THE COURT IS ANONYMOUS. WITHOUT THIS INFORMATION CHARTER CANNOT WITHHOLD DISCLOSURE OF YOUR INFORMATION.**

77

Please note that the objection deadline provided in this letter and the due date on the subpoena may not coincide as Charter may have been granted an extension to fulfill its obligations under this court order.

Questions regarding your legal rights should be directed to the attorney of your choice. If you or your attorney has questions regarding the subpoena itself, you should contact the requestor directly. If you have any questions regarding your Account, Charter's policies or this correspondence, you should review the attached FAQs or the named accountholder may call Charter's Security Department directly at 866-228-0195. Please have this letter in hand if you call because you will be asked to confirm information contained herein.

Sincerely,

**Charter Communications, Inc.**

Enclosures