11/25/11

Re: Case: New Sensation, Inc v. Does 1-1474

Court Case No. CV-11-2770-MEJ.



Office of the Clerk
United States District Court
450 Golden Gate Avenue
San Francisco, CA 94102-3489

Dear Honorable Judge,

     I am writing you concerning the Court Case: New Sensation, Inc v. Does 1-1474. Court Case No. CV-11-2770-MEJ. They are stating that I illegally downloaded one of their movies, Big Bang Theory A XXX Parody. I never knowingly downloaded this movie. I would like to object to the subpoena that was issued to Charter Communication in the Eastern District of Missouri, in pursuit of my personal information. My Charter case number is 11-3730, with my ID number being 1335. I believe I did no wrong doing in this matter. I do not know where the plaintiff got this information or what their motive is behind it. So I ask of the honorable Judge, to drop the subpoena so my personal information will not be handed over to the plaintiff.

     Thank You,

     Anonymously

AO 88B (Rev 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of Missouri

| | | |
|---|---|---|
| New Sensations, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. CV-11-2770-MEJ |
| | ) | |
| DOES 1-1474 | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Central District of California ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Custodian of Records, CHARTER COMMUNICATIONS (hereinafter "ISP"), Law Enforcement Paralegal
12405 Powerscourt Drive, Saint Louis. MO 63131

⚓ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:

> Documents sufficient to identify the names, addresses, telephone numbers, and email addresses of ISP's subscribers assigned the IP addresses identified on Attachment A on the corresponding dates at the corresponding times. You are to comply with this subpoena pursuant to the terms set forth in the Order attached herein as Attachment B.

| Place: Law Offices of Ira M. Siegel c/o BRS | Date and Time: |
|---|---|
| 100 Chesterfield Business Parkway, 2nd Floor | November 28, 2011 at 9:00 a.m. ✱ |
| Saint Louis, MO 63005 | |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached. ✱ Compliance with this subpoena may be a multi-step process pursuant to the Order attached (Attachment B). At least the first step should be completed by October 13, 20... with all steps completed by the date set forth under "Date and Time" above: November 28, 2011. (See paragraphs 4 and 5 of the Order.)

Date: September 14, 2011

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | *Ira M. Siegel* |
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
New Sensations, Inc. , who issues or requests this subpoena, are:
Ira M. Siegel, Law Offices of Ira M. Siegel, 433 N. Camden Drive, Suite 970, Beverly Hills, CA 90210, Email:
subpoena@irasiegellaw.com, Telephone: 888-406-1004

**ATTACHMENT B**

UNITED STATES DISTRICT COURT

For the Northern District of California

1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                            Northern District of California

10

11   NEW SENSATIONS, INC.,                          No. C 11-2770 MEJ

12                          Plaintiff,               **ORDER GRANTING PLAINTIFF'S**
                                                     **EX PARTE APPLICATION FOR**
13              v.                                   **LEAVE TO TAKE LIMITED**
                                                     **EXPEDITED DISCOVERY**
14   DOES 1-1,474,

15                          Defendants.              Docket No. 5

16

17   _____       /

18                              **I.   INTRODUCTION**

19          Plaintiff New Sensations, Inc. ("Plaintiff") has filed an *ex parte* Application pursuant to

20   Federal Rules of Civil Procedure 26 and 45, requesting leave to take expedited discovery to

21   determine the identity of 1,474 Doe Defendants (collectively, "Defendants") named in this action.

22   Dkt. No. 5 ("Pl.'s App."). For the reasons provided below, the Court **GRANTS** Plaintiff's

23   Application.

24                              **II.   BACKGROUND**

25          On June 7, 2011, Plaintiff filed this lawsuit against 1,474 Doe Defendants, alleging that

26   Defendants illegally reproduced and distributed a work subject to Plaintiff's exclusive license. ("*Big*

27   *Bang Theory: A XXX Parody*"), using an internet peer-to-peer ("P2P") file sharing network known

28   as BitTorrent, and thereby violated the Copyright Act. 17 U.S.C. § 101-1322.  Compl. ¶¶ 6-15, Dkt.

                                                     **Attachment B - Page 1 of 12**

1   No. 1. Plaintiff alleges that because the alleged infringement occurred on the Internet, Defendants

2   acted under the guise of their Internet Protocol ("IP") addresses rather than their real names. *Id.* at ¶

3   10; Pl.'s App. at 5-6. As a result, Plaintiff contends that it cannot determine Defendants' true

4   identities without procuring the information from Defendants' respective Internet Service Providers

5   ("ISPs"), which can link the IP addresses to a real individual or entity. Pl.'s App. at 6.

6   Consequently, Plaintiff asks the Court to grant it expedited discovery to issue subpoenas to the

7   relevant ISPs so that the ISPs will produce the name, address, telephone number, and email address

8   for each Defendant. *Id.* at 25, Ex. 1.

9                           **III.  LEGAL STANDARD**

10          Pursuant to Federal Rule of Civil Procedure ("Rule") 26(d)(1), a court may authorize early

11  discovery before the Rule 26(f) conference for the parties' convenience and in the interest of justice.

12  Courts within the Ninth Circuit generally use a "good cause" standard to determine whether to

13  permit such discovery. *See, e.g., Apple Inc. v. Samsung Electronics Co., Ltd.*, 2011 WL 1938154, at

14  *1 (N.D. Cal. May 18, 2011); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276

15  (N.D. Cal. 2002). "Good cause may be found where the need for expedited discovery, in

16  consideration of the administration of justice, outweighs the prejudice to the responding party."

17  *Semitool*, 208 F.R.D. at 276. The court must perform this evaluation in light of "the entirety of the

18  record . . . and [examine] the reasonableness of the request in light of all the surrounding

19  circumstances." *Id.* at 275 (citation & quotation marks omitted). In determining whether there is

20  good cause to allow expedited discovery to identify anonymous internet users named as doe

21  defendants, courts consider whether: (1) the plaintiff can identify the missing party with sufficient

22  specificity such that the Court can determine that defendant is a real person or entity who could be

23  sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive

24  defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the

25  plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant

26  through discovery such that service of process would be possible. *Columbia Ins. Co. v.*

27  *seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

28

UNITED STATES DISTRICT COURT
For the Northern District of California

2

1

2    **IV. DISCUSSION**

3    **A.    Whether Plaintiff has Identified the Defendants with Sufficient Specificity**

4          Under the first factor, the Court must examine whether Plaintiff has identified the Defendants

5    with sufficient specificity, demonstrating that each Defendant is a real person or entity who would

6    be subject to jurisdiction in this Court. *See Id.* at 578. Here, Plaintiff proffers that it retained

7    Copyright Enforcement Group, LLC ("CEG"), which utilized forensic software to identify

8    Defendants' IP addresses on the date and time that they engaged in the alleged distribution of *Big*

9    *Bang Theory: A XXX Parody* via the BitTorrent protocol, and has compiled the information into a

10   log attached as Exhibit A to Plaintiff's Complaint. Pl.'s App. at 9; Decl. of Jon Nicolini ¶¶ 10-16,

11   Dkt. No. 5-1. Plaintiff explains that Defendants gained access to the Internet only by setting up an

12   account through various ISPs, and that by providing the ISPs the information detailed in Exhibit A,

13   the ISPs can look up the Defendants' identities by reviewing their respective subscriber activity

14   logs. Nicolini Decl. ¶¶ 18-20. Thus, the Court finds that Plaintiff has come forward with sufficient

15   information demonstrating that the Defendants are real persons or entities who may be sued in

16   federal court. *See MCGIP, LLC v. Does 1-149*, 2011 WL 3607666, at *2 (N.D. Cal. Aug. 15, 2011)

17   (finding that the plaintiff had identified the Doe defendants with sufficient specificity by submitting

18   a chart listing each of the defendants by the IP address assigned to them on the day it alleged the

19   particular defendant engaged in the infringing conduct).

20   **B.    Whether Plaintiff has Identified All Previous Steps to Locate Defendants**

21         Under the second factor, the Court must assess the prior steps Plaintiff has taken to locate the

22   Defendants. *See Columbia Ins. Co.*, 185 F.R.D. at 579. "This element is aimed at ensuring that

23   plaintiffs make a good faith effort to comply with the requirements of service of process and

24   specifically identifying defendants." *Id.* Here, Plaintiff contends that it has exhausted all possible

25   means to find the Defendants' names, addresses, phone numbers, and email addresses. Pl.'s App. at

26   9. In support, Plaintiff cites to paragraphs 18 through 20 of Mr. Nicolini's Declaration. *Id.*

27   Reviewing Mr. Nicolini's testimony, he states CEG's System inspects file-sharing networks for

28   computers that are distributing at least a substantial portion of a copy of a copyrighted work owned

3

UNITED STATES DISTRICT COURT
For the Northern District of California

1  by Plaintiff, and when CEG finds such a computer, CEG's System also collects publicly accessible

2  information, including the time and date the infringer was found, the IP address assigned to the

3  infringer's computer, the size of the accused file, and the name of the ISP having control of the IP

4  address. Nicolini Decl. ¶ 18. Mr. Nicolini states that, because of the partially anonymous nature of

5  the P2P Internet distribution system used by Defendants, CEG is unable to determine their true

6  names, street addresses, telephone numbers, and email addresses. *Id.*

7       First, to locate swarms[1] where peers were distributing *Big Bang Theory: A XXX Parody,*

8  CEG utilizes its data collection system to find digital files on the Internet that have the same title as

9  the copyrighted work. *Id.* ¶¶ 11, 14. Mr. Nicolini states that, in this case, the P2P network on which

10  CEG found unauthorized distribution of *Big Bang Theory: A XXX Parody* was a BitTorrent network.

11  *Id.* ¶ 16. CEG then downloads a full copy of the file, which is then forwarded to a two-stage

12  verification computer process and identified by two people. *Id.* ¶ 17. The process compares the

13  digital data in the suspect file with digital data in a digital copy of the motion picture obtained from

14  Plaintiff. *Id.* If the suspect file matches the authorized file, then the two people play the suspect file

15  and watch the motion picture. *Id.* If both people confirm that a substantial portion of the motion

16  picture in the suspect file is substantially the same as a corresponding portion of *Big Bang Theory: A*

17  *XXX Parody,* then particular unique data (often referred to as metadata) in the suspect file is noted

18  by CEG's System, and the System searches for additional computers on P2P networks that have the

19  same suspect file. *Id.*

20       After locating and inspecting computers that are distributing at least a substantial portion of a

21  copy of *Big Bang Theory: A XXX Parody,* Mr. Nicolini states that CEG's System collects (a) the

22  time and date the infringer was found, (b) the time(s) and date(s) when a portion of the accused file

23

24  [1] P2P networks distribute infringing copies of copyrighted works with file sharing software
   such as BitTorrent when one user accesses the Internet through an ISP and intentionally makes a
25  digital file of a work available to the public from his or her computer. Nicolini Decl. ¶ 6. This file
   is referred to as the first "seed." *Id.* Other users, who are referred to as "peers," then access the
26  Internet and request the file. *Id.* These users engage each other in a group, referred to as a "swarm,"
   and begin downloading the seed file. *Id.* As each peer receives portions of the seed, that peer makes
27  those portions available to other peers in the swarm. *Id.*

28
                                         4

1  was downloaded successfully to the accused infringer's computer, (c) the time and date the infringer

2  was last successfully connected to via the P2P network with respect to the infringer's computer's

3  downloading and/or uploading the accused file to the Internet, (d) the IP address assigned to the

4  infringer's computer, (e) the P2P software application used by the infringer and the port number

5  used by the infringer's P2P software, (f) the size of the accused file, (g) the percent of the file

6  downloaded by CEG from the infringer's computer, (h) the percent of the accused file on the

7  infringer's

8  computer which is available at that moment for copying by other peers, and (i) any relevant

9  transfer errors. *Id.* ¶ 18. In addition, CEG uses available databases to record the name of the ISP

10  having control of the IP address and the state (and often the city or county) associated with that IP

11  address. *Id.*

12        Based on Mr. Nicolini's explanation of the foregoing steps as utilized to investigate

13  Defendants' activity with respect to *Big Bang Theory: A XXX Parody* on the BitTorrent protocol, the

14  Court finds that Plaintiff has sufficiently described its efforts to identify Defendants.

15  **C.      Whether Plaintiff's Suit Against Defendants Could Withstand a Motion to Dismiss**

16        Under the third factor, the inquiry shifts to the substance of Plaintiff's claims and analyzes

17  whether Plaintiff's Complaint would likely survive a motion to dismiss. *See Columbia Ins. Co.,* 185

18  F.R.D. at 579. In its Complaint, Plaintiff has asserted a federal copyright infringement claim. To

19  state a claim for copyright infringement, Plaintiff must establish: (1) ownership of a valid copyright,

20  and (2) copying of constituent elements of the copyrighted work that are original. *Rice v. Fox*

21  *Broad. Corp.,* 330 F.3d 1170, 1174 (9th Cir. 2003) (citing *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.,*

22  499 U.S. 340, 361 (1991)). "To be liable for direct infringement, one must 'actively engage in' and

23  'directly cause' the copying." *Online Policy Group v. Diebold, Inc.,* 337 F. Supp. 2d 1195, 1199

24  (N.D. Cal. 2004). Reviewing Plaintiff's Complaint, Plaintiff has adequately alleged that *Big Bang*

25  *Theory: A XXX Parody* is the subject of a valid Certificate of Registration issued by the United

26  States Copyright Office and that Plaintiff is the exclusive rightsholder of the distribution and

27  reproduction rights of *Big Bang Theory: A XXX Parody.* Compl. ¶¶ 7. 8. Plaintiff has also alleged

28

UNITED STATES DISTRICT COURT
For the Northern District of California

5

1    that the Defendants reproduced and distributed *Big Bang Theory: A XXX Parody* via BitTorrent to

2    numerous third parties. Compl. ¶¶ 10-12. Additionally, Plaintiff has alleged that Defendants

3    actively engaged in or directly caused the copying by completing each of the steps in the BitTorrent

4    file-sharing protocol, including intentionally downloading a torrent file particular to *Big Bang*

5    *Theory: A XXX Parody*, loading that torrent file into the BitTorrent client, entering a BitTorrent

6    swarm particular to *Big Bang Theory: A XXX Parody*, and ultimately, downloading and uploading

7    pieces of a *Big Bang Theory: A XXX Parody* file to eventually obtain a whole copy of the file. *Id.*

8    Based on these allegations, the Court finds that Plaintiff has pled a *prima facie* case of copyright

9    infringement and set forth sufficient supporting facts to survive a motion to dismiss.

10    **D.**    **Whether there is a Reasonable Likelihood of Being Able to Identify Defendants**

11       The fourth factor examines whether Plaintiff has demonstrated that there is a reasonable

12    likelihood that the discovery it requests will lead to the identification of Defendants such that it may

13    effect service of process. *See Columbia Ins.*, 185 F.R.D. at 580. As indicated above, Plaintiff

14    contends that the key to locating the Defendants is through the IP addresses associated with the

15    alleged activity on BitTorrent. Specifically, Plaintiff contends that because ISPs assign a unique IP

16    address to each subscriber and retain subscriber activity records regarding the IP addresses assigned,

17    the information sought in the subpoena will enable Plaintiff to serve Defendants and proceed with

18    this case. *See* Pl.'s App. at 6; Nicolini Decl. ¶¶ 19-20. Taking this into account, the Court finds that

19    Plaintiff has made a sufficient showing as to this factor.

20    **E.**    **Summary**

21       Taking the foregoing factors into consideration, the Court finds that Plaintiff has

22    demonstrated that good cause exists to grant it leave to conduct early discovery. Moreover, the

23    Court finds that the expedited discovery sought furthers the interests of justice and presents minimal

24    inconvenience to the ISPs to which the subpoenas are directed. Thus, the expedited discovery is in

25    line with Rule 26(d).

26    **F.**    **Joinder of 1,474 Defendants**

27       Having found that expedited discovery is appropriate, the question becomes whether the

28

6

**Attachment B - Page 6 of 12**

UNITED STATES DISTRICT COURT
For the Northern District of California

1   discovery sought is proper as to all 1,474 Defendants. Plaintiff presents a lengthy discussion in its

2   Application as to why its decision to name join 1,474 Defendants is justified under Rule 20. *See*

3   Pl.'s App. at 11-19.  Under Rule 20, defendants may be joined in one action when claims arise from

4   the same transaction or occurrence or series of transactions or occurrences, and any question of law

5   or fact in the action is common to all defendants. Fed. R. Civ. P. 20(a)(2).  The permissive joinder

6   rule "is to be construed liberally in order to promote trial convenience and to expedite the final

7   determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v.*

8   *Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1997).  The purpose of Rule 20(a) is to

9   address the "broadest possible scope of action consistent with fairness to the parties; joinder of

10   claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383

11   U.S. 715, 724 (1966).  Rule 20(a) imposes two specific requisites to the joinder of parties: (1) a right

12   to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the

13   same transaction or occurrence, and (2) some question of law or fact common to all the parties must

14   arise in the action. Fed. R. Civ. P. 20(a).  Both of these requirements must be satisfied in order to

15   justify party joinder under Rule 20(a). *Id.*  In situations of misjoinder of parties, Rule 21 provides

16   that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."

17         1.      Same Transaction, Occurrence, or Series of Transactions or Occurrences

18         "The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of

19   transactions or occurrences' to require a degree of factual commonality underlying the claims."

20   *Bravado Int'l Group Merchandising Servs. v. Cha*, 2010 WL 2650432, at *4 (C.D. Cal. June 30,

21   2010) (citing *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir.1997)).  Typically, this means that a

22   party "must assert rights . . . that arise from related activities-a transaction or an occurrence or a

23   series thereof." *Id.* (citation omitted).  Recently, courts in this District – as well as several other

24   federal districts – have come to varying decisions about the proprietary of joining multiple

25   defendants in BitTorrent infringement cases. *See MCGIP, LLC v. Does 1-149*, 2011 WL 3607666,

26   at 3 (N.D. Cal. Aug. 15, 2011) (listing a sample of recent decisions).  This Court has carefully

27   reviewed such decisions and notes that they are highly dependent on the information the plaintiff

28

UNITED STATES DISTRICT COURT
For the Northern District of California

7

1   presented regarding the nature of the BitTorrent file-sharing protocol and the specificity of the

2   allegations regarding the Doe defendants' alleged infringement of the protected work. Both of these

3   factors guide the Court's joinder analysis in this matter as well.

4        Reviewing Plaintiff's Application and supporting materials, Plaintiff has provided a fairly

5   detailed explanation about how the BitTorrent protocol operates. *See* Nicolini Decl. ¶¶ 6, 7, 22. Mr.

6   Nicolini explains:

7            P2P networks distribute infringing copies of motion pictures (and
             works in other forms such as music and books) with file sharing

8            software such as BitTorrent as follows: The process begins with one
             user accessing the Internet through an Internet Service Provider

9            ("ISP")
             and intentionally making a digital file of the work available on the

10           Internet to the public from his or her computer. This first file is often
             referred to as the first "seed." I will refer to the person making this

11           seed available as the "original seeder." Persons seeking to download
             such a work also access the Internet through an ISP (which may or

12           may not be the same ISP as used by the original seeder) and seek out
             the work on a P2P network. With the availability of the seed, other

13           users, who are referred to as "peers," access the Internet and request
             the file (by searching for its title or even searching for the torrent's

14           "hash" - described below) and engage the original seeder and/or each
             other in a group, sometimes referred to as a "swarm," and begin

15           downloading the
             seed file. In turn, as each peer receives portions of the seed, most often

16           that peer makes those portions available to other peers in the swarm.
             Therefore, each peer in the swarm is at least copying and is usually

17           distributing, as a follow-on seeder, copyrighted material at the same
             time. Of the over 20,000 infringers tracked in connection with several

18           cases currently pending, at least 95% of the Doe defendants were
             uploading (i.e., distributing) illegal copies of our clients' motion

19           pictures at the moment indicated by the Timestamp in the respective
             Exhibit A appended to each complaint, which is also true for this case.

20           In P2P networks, the infringement may continue even after the
             original seeder has gone completely offline. Any BitTorrent client may

21           be used to join a swarm. As more peers join a swarm at any one
             instant, they obtain the content at even greater speeds because of the

22           increasing number of peers simultaneously offering the content as
             seeders

23           themselves for unlawful distribution. As time goes on, the size of the
             swarm varies, yet it may endure for a long period, with some swarms

24           enduring for 6 months to well over a year depending on the popularity
             of a particular motion picture.

25

26   Nicolini Decl. ¶ 6. Based on this information, the Court finds that Plaintiff has at least presented a

27   reasonable basis to argue that the BitTorrent protocol functions in such a way that peers in a single

28

                                            8

1    swarm downloading or uploading a piece of the same seed file may fall within the definition of

2    "same transaction, occurrence, or series of transactions or occurrences" for purposes of Rule

3    20(a)(1)(A).

4        Further, the Court finds that Plaintiff has provided enough specificity to make a preliminary

5    determination that the 1,474 Doe Defendants here were part of the same swarm. Reviewing Exhibit

6    A to Plaintiff's Complaint, Defendants' alleged infringing activity occurred over a period of over

7    nine months, from August 2010 through June 2011. *See* Compl, Ex. A. While this period might

8    seem protracted, with respect to any particular swarm, the hash (an alphanumeric representation of a

9    digital file) associated with the copied file's torrent file remains the same within that swarm.

10   Nicolini Decl. ¶ 6. For each of the 1,474 Doe Defendants, Plaintiff has provided an identical hash.

11   Compl. Ex. A. Based on these allegations, Plaintiff's claims against the Doe Defendants appear

12   logically related. Each putative Defendant is a possible source for Plaintiff's copyrighted work, and

13   may be responsible for distributing the work to the other putative Defendants, who are also using the

14   same file-sharing protocol to copy the identical copyrighted material. *See Disparte v. Corporate*

15   *Executive Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004) (to satisfy Rule 20(a)(2)(A) claims must be "logically

16   related" and this test is "flexible."). While the Doe Defendants may be able to rebut these

17   allegations later, Plaintiff has sufficiently alleged that its claims against the defendants potentially

18   stem from the same transaction or occurrence, and are logically related. *See Arista Records LLC v.*

19   *Does 1–19*, 551 F. Supp.2d 1, 11 (D.D.C.) ("While the Court notes that the remedy for improper

20   joinder is severance and not dismissal, . . . the Court also finds that this inquiry is premature without

21   first knowing Defendants' identities and the actual facts and circumstances associated with

22   Defendants' conduct."). Plaintiff has made a preliminary showing that these Defendants were

23   present in the same *Big Bang Theory: A XXX Parody* swarm on BitTorrent and shared pieces of the

24   same seed file containing *Big Bang Theory: A XXX Parody.*

25       2.   Question of Law or Fact Common to All Defendants

26        Rule 20(a)(2)(B) requires Plaintiff's claims against the putative Doe Defendants to contain a

27   common question of law or fact. Here, Plaintiff will have to establish against each Defendant the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

9

1   same legal claims concerning the validity of the copyright in *Big Bang Theory: A XXX Parody* and

2   the infringement of the exclusive rights reserved to Plaintiff as copyright holder. Furthermore,

3   Plaintiff alleges that the Defendants utilized the same BitTorrent file-sharing protocol to illegally

4   distribute and download *Big Bang Theory: A XXX Parody* and, consequently, factual issues related

5   to how BitTorrent works and the methods used by Plaintiff to investigate, uncover, and collect

6   evidence about the infringing activity will be essentially identical for each Defendant. *See Call of*

7   *the Wild Movie, LLC v. Does 1-1062*, 770 F. Supp. 2d 332, 343 (D.D.C. 2011). The Court

8   recognizes that each putative defendant may later present different factual and substantive legal

9   defenses "but that does not defeat, at this stage of the proceedings, the commonality in facts and

10  legal claims that support joinder under Rule 20(a)(2)(B)." *Id.*

11       3.   Prejudice to Any Party or Needless Delay

12       Finally, the Court assesses whether joinder would prejudice the parties or result in needless

13  delay. Joinder in a single case of the putative defendants who allegedly infringed the same

14  copyrighted material promotes judicial efficiency and, in fact, is beneficial to the putative

15  defendants. *Id.* at 344; *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 161 (D. Mass.

16  2008) (court consolidated separate Doe lawsuits for copyright infringement since the "cases involve

17  similar, even virtually identical, issues of law and fact: the alleged use of peer-to-peer software to

18  share copyrighted sound recordings and the discovery of defendants' identities through the use of a

19  Rule 45 subpoena to their internet service provider. Consolidating the cases ensures administrative

20  efficiency for the Court, the plaintiffs, and the ISP, and allows the defendants to see the defenses, if

21  any, that other John Does have raised.").

22       Here, Plaintiff is currently obtaining identifying information from ISPs so that they can

23  properly name and serve the defendants. If the Court were to consider severance at this juncture,

24  Plaintiff would face significant obstacles in its efforts to protect its copyright from illegal

25  file-sharers and this would only needlessly delay the case. Plaintiff would be forced to file 1,474

26  separate lawsuits, in which it would then move to issue separate subpoenas to ISPs for each

27  defendant's identifying information. Plaintiff would additionally be forced to pay the Court separate

28

Attachment B - Page 10 of 12

UNITED STATES DISTRICT COURT
For the Northern District of California

1  filing fees in each of these cases, which would further limit its ability to protect its legal rights.

2  "This would certainly not be in the 'interests of convenience and judicial economy,' or 'secure a

3  just, speedy, and inexpensive determination of the action.'" *Call of the Wild*, 770 F. Supp. 2d at 334

4  (citation omitted) (declining to sever defendants where parties joined promotes more efficient case

5  management and discovery and no party prejudiced by joinder).

6        Further, the Doe Defendants are currently identified only by their IP addresses and are not

7  named parties. Consequently, they are not required to respond to Plaintiff's allegations or assert a

8  defense. Defendants may be able to demonstrate prejudice once Plaintiff proceeds with its case

9  against them, but they cannot demonstrate any harm that is occurring to them before that time. *Id.*

10        Thus, the Court finds that, at this preliminary stage, Plaintiff has met the requirements of

11  permissive joinder under Rule 20(a)(2). The putative defendants are not prejudiced but likely

12  benefitted by joinder, and severance would debilitate Plaintiff's efforts to protect its copyrighted

13  material and seek redress from the Doe Defendants who have allegedly engaged in infringing

14  activity. To be fair, the Court recognizes that the questions of joinder and severance must be

15  deferred until after discovery has been authorized and any motions to quash filed. The Court is also

16  cognizant of the logistical and administrative challenges of managing a case with numerous putative

17  defendants, a number of whom may seek to file papers pro se. However, severing the putative

18  defendants at this early stage is no solution to ease the administrative burden of the cases. The Court

19  therefore declines to sever the Doe Defendants at this time.

20                            **V. CONCLUSION**

21        For the reasons stated above, the Court **GRANTS** Plaintiff's Ex Parte Application for

22  Expedited Discovery (Dkt. No. 5) as follows:

23        1. IT IS HEREBY ORDERED that Plaintiff is allowed to serve immediate discovery on

24  Does 1-1,474's ISPs listed in Exhibit A to the Complaint by serving a Rule 45 subpoena that seeks

25  information sufficient to identify the Doe Defendants, including the name, address, telephone

26  number, and email address of Does 1-1,474. Plaintiff's counsel shall issue the subpoena and attach a

27  copy of this Order.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1      2. IT IS FURTHER ORDERED that the ISP will have 30 days from the date of service upon

2  them to serve Does 1-1,474 with a copy of the subpoena and a copy of this Order. The ISP may

3  serve the Doe Defendants using any reasonable means, including written notice sent to his or her last

4  known address, transmitted either by first-class mail or via overnight service.

5      3. IT IS FURTHER ORDERED that Does 1-1,474 shall have 30 days from the date of

6  service to file any motions in this Court contesting the subpoena (including a motion to quash or

7  modify the subpoena). If that 30-day period lapses without Does 1-1,474 contesting the subpoena,

8  the ISP shall have 10 days to produce the information responsive to the subpoena to Plaintiff.

9      4. IT IS FURTHER ORDERED that the subpoenaed entity shall preserve any subpoenaed

10  information pending the resolution of any timely-filed motion to quash.

11      5. IT IS FURTHER ORDERED that the ISP that receives a subpoena pursuant to this order

12  shall confer with Plaintiff and shall not assess any charge in advance of providing the information

13  requested in the subpoena. The ISP that receives a subpoena and elects to charge for the costs of

14  production shall provide a billing summary and cost reports that serve as a basis for such billing

15  summary and any costs claimed by the ISP.

16      6. IT IS FURTHER ORDERED that Plaintiff shall serve a copy of this order along with any

17  subpoenas issued pursuant to this order to the necessary entities.

18      7. IT IS FURTHER ORDERED that any information disclosed to Plaintiff in response to a

19  Rule 45 subpoena may be used by Plaintiff solely for the purpose of protecting Plaintiff's rights as

20  set forth in its complaint.

21      **IT IS SO ORDERED.**

22

23  Dated: August 24, 2011

24                                      Maria-Elena James

25                                      Chief United States Magistrate Judge

26

27

28

                              12

UNITED STATES DISTRICT COURT
For the Northern District of California